It is strenuously urged on behalf of the city of Norwood that the decision in the case of Hutchinson v. City of Lakewood,125 Ohio St. 100, 180 N.E. 643, compels a reversal of this judgment. That case held that the construction of a sewer, in the absence of statute, by a municipality is a governmental function, and that no liability arises against such municipality for negligence in the performance of that function.
We have not here, however, the case of the construction of a sewer by a municipality, and hence the Hutchinson case does not apply. The sewer in question here was constructed by private parties in a street known as Roseland Mound avenue, in a private subdivision. When Roseland Mound avenue was dedicated to the *Page 486 
city of Norwood and accepted by it for street purposes, the sewer was taken over with the street by the city of Norwood. The city constructed no sewer. It later constructed additional municipal sewage facilities in this territory, and thereby abated the condition before the death of Mrs. Sheen.
The defendant in error claims, on the other hand, that we have here, not a case of liability for failure to provide a sewer, but of the faulty construction and maintenance of a sewer, a ministerial act for which liability arises against the city under the decisions of City of Portsmouth v. MitchellManufacturing Co., 113 Ohio St. 250, 148 N.E. 846,43 A.L.R., 961 and City of Salem v. Harding, 121 Ohio St. 412,169 N.E. 457. However, the petition, while it alleges control and maintenance, does not allege negligence on the part of the city of Norwood. Negligence will not be presumed. Village ofWilloughby v. Malone, 122 Ohio St. 315, 171 N.E. 402. Nor will a failure to allege negligence in a petition be made up by assumption of facts not pleaded.
However, the defendant in error claims that an appropriation of private property to a public use is alleged in the petition. It is conceded that such a cause of action does not abate with the death of the owner of the real property. No appropriation of private property to public use in terms is alleged. The facts set forth with reference to the taking over of the street by the city of Norwood and the use by the city of such sewer and drainage facilities in such a way as to cause the flooding and pollution of the land in question are the facts upon which the plaintiff below must rely in order to make out a case of appropriation of private property good as against demurrer.
Whatever taking of property is set forth is clearly temporary only. This was not the case of an actual destruction of the soil, nor any similar permanent injury to the realty. In fact, the second amended petition *Page 487 
does not allege any tortious or unlawful act on the part of the city of Norwood after the death of Mrs. Sheen. On the contrary, it is alleged that the condition was entirely abated prior to the death of Mrs. Sheen, and hence it cannot be contended that there was anything but a temporary taking of this property for public use. There is no authority in this state as to whether the averment of such facts without pleading in terms appropriation of private property constitutes the pleading of a taking of private property without compensation, but in other states similar pleadings have been upheld as setting forth such a temporary taking. Jacobs v. City of Seattle, 93 Wn. 171,160 P. 299, L.R.A., 1917B, 329; Faust v. Richland County,117 S.C. 251, 109 S.E. 151.
It was held in Emery v. City of Lowell, 109 Mass. 197: "Under a declaration alleging that the defendants obstructed a drain so that water and filth flowed into the plaintiff's cellar, destroyed his property therein, and put him to trouble and expense to get the water out, the plaintiff may recover damages for any injury which affected his estate, or diminished its value for use and occupation, by reason of the inconvenience and annoyance of flooding the cellar, and of unwholesome or disagreeable smells, or of insects thereby generated or attracted to the house; and also his reasonable expenses in preventing or removing the nuisance, and of changes and repairs thereby rendered necessary and which he could not by reasonable care and diligence have avoided."
The defendant below seems to have considered that an appropriation of private property to public use was alleged in the petition, for the answer specifically denies that there was any such appropriation.
There was, to be sure, no actual taking of the land itself, but there was a direct encroachment upon the land which excluded and restricted the dominion and control of the owner over it until the condition was *Page 488 
abated. This constituted legally a taking of the property for public use. Lake Erie Western Rd. Co. v. Commissioners ofHancock County, 63 Ohio St. 23, 57 N.E. 1009.
As stated in 10 Ruling Case Law, 66, Section 58: "If the land, 'in its corporeal substance and entity,' is property, still, all that makes this property of any value is the aggregation of rights or qualities which the law annexes as incidents to the ownership of it. The constitutional prohibition must have been intended to protect all the essential elements of ownership which make property valuable. Among these elements is, fundamentally, the right of user, including, of course, the corresponding right of excluding others from the use. A physical interference with the land, which substantially abridges this right, takes the owner's property to just so great an extent as he is thereby deprived of his right. To deprive one of the use of his land is depriving him of his land; and the private injury is thereby as completely effected as if the land itself were physically taken away. Accordingly it has been held that any use of land for a public purpose, which inflicts an injury upon adjacent land such as would have been actionable if caused by a private owner, is taking within the meaning of the constitution and cannot be authorized by the legislature without compensation."
It was held in the third paragraph of the syllabus inLake Erie Western Rd. Co. v. Commissioners of Hancock County,supra: "Any direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it, is a taking of his property, for which he is guaranteed a right of compensation by Section 19, of the Bill of Rights."
In an annotation to 24 L.R.A. (N.S.), 230, this case was cited together with a number of cases from other jurisdictions, declaring the same rule of law. *Page 489 
The principal decision annotated is the case of Lovett v. WestVirginia Central Gas Co., 65 W. Va. 739, 65 S.E. 196, 24 L.R.A. (N.S.), 230. In that case it was held: "2. The impairment of the utility of one's property by the direct invasion of his private domain is a taking of his property, within the constitutional meaning, though the owner has not less of material things than he had before."
Under the authorities cited above, we think that a temporary taking of property is alleged in the petition, and that the action did not abate with the death of the owner. We do not rely upon the case of City of Mansfield v. Balliett, 65 Ohio St. 451, 63 N.E. 86, 58 L.R.A., 628, because of the fact that in that decision the judges of this court were evenly divided. However, in certain Ohio cases a recovery for a taking of private property under this rule has been allowed. Hamilton,Glendale Cincinnati Traction Co. v. Hamilton LindenwaldElectric Transit Co., 69 Ohio St. 402, 69 N.E. 991; Reeves v.Treasurer of Wood County, 8 Ohio St. 333, Vermillion v. Myers,82 Ohio St. 414, 92 N.E. 1125; 1 Nichols on Eminent Domain (2d Ed.), Section 113; 2 Tiffany on Real Property (2d Ed.), 2161.
Authorities upon the general proposition that any direct encroachment upon land which excludes and restricts the dominion and control of the owner over it constitutes a taking of private property without compensation, and particularly with reference to the flooding of land with water or sewage, are as follows: Diamond v. North Attleborough, 219 Mass. 587,107 N.E. 445; Sharp v. Drainage District No. 7, 164 Ark. 306,261 S.W. 923; Smith v. Silverton, 71 Or. 379, 142 P. 609;Black Mountain Corporation v. Houston, 211 Ky. 621,277 S.W. 993; Thompson v. City of Winona, 96 Miss. 591, 51 So. 129, Ann. Cas., 1912B, 449; Washburn Moen Mfg. Co. v. City ofWorcester, 153 Mass. 494, 27 N.E. 664; Joplin ConsolidatedMining Co. v. *Page 490 City of Joplin, 124 Mo., 129, 27 S.W. 406; Winn v. Village ofRutland, 52 Vt. 481.
This was a public use, for sewage disposal and drainage is a public function. Lake Erie Western Rd. Co. v. Commissionersof Hancock County, supra,
The discharge of the sewage upon Mrs. Sheen's property is shown by ample evidence in the record. The record tends to show that there was an iron pipe or drain tile, all covered except the end, which discharged sewer water from the private property in the rear of the Sheen property and down onto the Sheen property, and that this water did contain pollution and filth which was spread over the western end of the Sheen property some 65 or 75 feet. Certain letters from the chief engineer of the city of Norwood and from the principal assistant engineer, introduced in evidence, show that sewage from about twenty residences in the Nead subdivision was discharged directly into a small water course crossing the property at Cypress avenue, and that the city accepted this subdivision without improper sewage having first been remedied. Upon repeated complaints being made, the city of Norwood did construct a proper sewer in Roseland Mound avenue with proper connections and terminal connections, and had fully abated the situation before the death of Mrs. Sheen. The jury by its verdict evidently found as a fact that there was negligent maintenance of the sewer.
Holding as we do that the petition sets forth a cause of action for a temporary appropriation of real property to a public use, we do not consider the question of nuisance or its abatement under Section 11397, General Code.
While a cause of action was stated in the petition, however, reversible error was committed at the trial, both in the admission of evidence and in refusing to give certain charges requested.
The plaintiffs below called a real estate expert to *Page 491 
testify to the value of the real estate involved. Since this was not a permanent injury, the value of the land was irrelevant, and this testimony was incompetent, misleading and prejudicial.
A similar holding was made by the Court of Appeals of Kentucky, City of Pikeville v. Riddle, 200 Ky. 395,255 S.W. 63. In that case an action had been filed against the city for temporary injury to real property by diversion of the natural flow of water in grading a street. A question was allowed by the trial court, as follows: "Just tell what you think it really did diminish the property?" The answer was, "Well, I would say from $1,000.00 to $2,000.00." This was held to constitute prejudicial error upon the ground that the issue was not how much the property itself had been diminished, but how much the value of its use had been diminished.
The authorities upon the rule of damages for temporary injuries for appropriation of real property are divided. As stated in 8 Ruling Case Law, 483, 484: "In many jurisdictions the rule is that the measure of damages for such an injury is the reasonable cost of repairing the property, with legal interest to the time of the trial, and, in some states, in addition thereto, the depreciation in its rental value or the value of its use during the period sued for, if it be rented out or owned for renting. Under this rule if the property be occupied by the owner, in addition to the reasonable cost of repairs the damage to its use, that is, the diminution, if any, is the value of the use of the property during the continuance of the nuisance or injury, covered by the period for which the action is brought. In many other states, however, the diminution in the rental value of the property is held to be the proper measure of damages for temporary injuries to property, together with such special damages by way of injury to crops or personal property and permanent injury to the land as may be shown * * *. *Page 492 
The diminished rental or usable value of property is to be determined according to the existing condition of the premises, and not with reference to what the usable value might have been had they been put to different uses; and so, damages cannot be recovered for the loss of the use of property for a particular purpose where it appears that the plaintiff did not intend to use it for that purpose."
17 Corpus Juris, 883, reads as follows:
"As bearing upon the question of diminution of value, diminution in the rental value of the premises may be shown. Where an injury to land is temporary, the measure of damages according to some authorities is the depreciation in the reasonable rental value of the land from the time of the injury. Where the injury is due to a continuing wrong for which successive recoveries may be had, the measure of damages is not the diminution of the value of the land, but the diminution in its rental value. So where land is injured by flowage and the deposit of debris thereon the measure of damages, according to some authorities, is the difference in rental value, where not greater than the cost of restoring the land to its original condition. Where lands are not commonly rented, diminution in rental value is not a reliable basis on which to estimate damages." Toebbe v. City of Covington, 145 Ky. 763,141 S.W. 421; Louisville, Henderson St. Louis Ry. Co. v. Roberts,144 Ky. 820, 139 S.W. 1073; City of Ardmore v. Orr, 35 Okl., 305,129 P. 867; Doremus v. Mayor and Aldermen of City of Paterson,73 N.J. Eq. 474, 69 A. 225; Adam v. Chicago, Burlington Quincy Ry. Co., 139 Mo. App., 204, 122 S.W. 1136.
A number of New York cases have held that evidence showing depreciation in rental value is competent to show damage suffered for injuries of this nature by a plaintiff in possession of his own premises, using them for his own business, or even residing in such premises. Francis v.Schoellkopf, 53 N.Y. 152; Kernochan *Page 493 
v. New York Elevated Rd. Co., 128 N.Y. 559. As the New York courts frequently use the term, they speak of the diminution in the rental or usable value of the premises."
However, it was held in the case of Henry Hall Sons' Co. v.Sundstrom Stratton Co., 138 App. Div. 548,123 N.Y. Supp., 390, that the measure of damages for a temporary infringement of one's rights by an interference with his property is the diminution in usable value of the property, which means the value of the use of the premises to the owner, as distinct from the rental value of the premises in a lease thereof by the owner to a tenant.
The court relied on the statement in Joyce on Nuisances, Section 488, that in the case of a temporary as distinguished from a permanent infringement, the true measure of damages has been held to be the diminution in the usable or rental value of the property, and also upon the decision in Bly v. EdisonElectric Illuminating Co., 111 App. Div. 170,97 N.Y. Supp., 592, affirmed by the Court of Appeals of New York in 188 N.Y. 582, 81 N.E. 1160. The judgment in the case of Henry HallSons' Co. v. Sundstrom Stratton Co. was affirmed by the Court of Appeals in 204 N.Y. 660. These cases are New York authorities in favor of the plaintiff in error.
This case does not present the question of restoring land to its former condition. This court has recently ruled upon the proper measure of damages for a temporary injury to real property which is susceptible of repair, so that the property may be restored to its original condition. Ohio Collieries Co.
v. Cocke, 107 Ohio St. 238, 140 N.E. 356. Here, however, the restoration was effected when the city in 1926 installed a new and adequate sewer, so that element is not in the case. Also these lands were not rented.
However, the exact question here presented as to the proper measure of damages for temporary injury *Page 494 
to real property from a flowage upon land and the backing up of water or the discharge of sewage thereon, when the condition has been completely abated, has not been the subject of declaration by this court. City of Toledo v. Lewis, 52 Ohio St. 624, and Upton Coal Mining Co. v. Williams, 75 Ohio St. 644, are cases of permanent injury to realty. Lower courts of Ohio in a number of cases have held in accord with the decision of the Kentucky Court of Appeals in City of Pikeville v.Riddle, supra. Upon the authority of that decision we hold that where injury to real property is temporary, the measure of damages, if the property be rented or held for rent, is the diminution in its rental value during the continuance of the injury; but, if it be occupied by the owner, it is the diminution in the value of the use of the property during that period, and that this rule applies in measuring damages arising from the temporary appropriation of real property. This conclusion compels us to hold that the trial court erred in refusing to give charge No. 3 requested by the city of Norwood, which was as follows: "If you find from the evidence that the defendant actually took possession and occupied a part or portion of plaintiff's property, the plaintiff may recover only such sum as will compensate him for the value of the use of the land so taken for the time only the same was actually possessed, and occupied by said defendant."
The court charged as follows, and this was the only charge on the measure of damages: "In ascertaining the damage sustained by the plaintiff, in the event you find by a preponderance of the evidence that the city acted with notice in causing this sewer to overflow the property of the plaintiff, in considering the question of damage you are restricted to such damage as you find by a preponderance of the evidence that the plaintiff has suffered by reason of the appropriation of any portion of her property by the city *Page 495 
of Norwood; in the depreciation, if any, of the rental value of the deceased's property and the reasonable compensation for the deprivation of the comfortable enjoyment of her property, if you so find, by a preponderance of the evidence that she was deprived of the comfortable enjoyment of her property."
As heretofore stated, since this was a temporary taking and injury, only, the plaintiff could only recover the value of the use of the land for the time it was occupied by the city of Norwood for the purpose of discharging the sewage thereon. Evidence upon diminution in rental value may be, and often is, admissible as bearing upon diminution in use value. But in this case, the court by its improper admission of evidence on selling value, and by its charge upon rental value and depreciation of comfortable enjoyment, encouraged the jury to combine three recoveries for the one damage. There cannot be in this case a three-fold allowance, one for depreciation in value of the lands, one for personal discomfort by the occupants, and one for diminished rental value of the lands. Doremus v. Mayorand Aldermen of City of Paterson, supra. This case holds in the syllabus as follows:
"12. Where, in a suit against a city to restrain it from polluting the waters of a stream by discharging its sewage into it unless it made compensation to the riparian owners, the answer alleged that the injury was temporary, no allowance could be made for alleged depreciation in the value of the lands of the riparian owners, nor for personal discomfort by the occupants thereof, and the measure of damages was the diminished annual value of the land."
"14. Where injury to real estate is only temporary and removable, depreciation in the market value of the land cannot be considered."
The charge of the court above given, combined with the refusal to give charge No. 3 requested on behalf of the city of Norwood, and combined with the admission *Page 496 
of testimony as to the front foot value of the real property, in effect permitted the jury to allow a threefold damage for the same injury, and probably was responsible for what the Court of Appeals termed an excessive amount in the verdict.
Holding that this refusal of the request to charge was prejudicial and misleading, and resulted in an excessive verdict by the jury, we are compelled to reverse the judgment of the Court of Appeals and to remand the case for further proceedings according to law.
Judgment reversed and cause remanded.
WEYGANDT, C.J., DAY, STEPHENSON and MATTHIAS, JJ., concur.