.Stewart, J.
The issue presented in these cases is whether a county is liable for an invasion and taking of the substantial property rights of a person by an act of such county strictly within the scope of its authority and unattended by any circumstances of negligence or malice.
The majority of the Court of Appeals was of the opinion that the amended petitions do not allege a taking of the property of Milton, Clara and Harry, either pro tanto or in toto, and that there can be no liability upon the part of the county in the present cases, since this court has held that an action in tort may not be brought against a county for negligence in the performance of a public duty resulting in a private injury, in the absence of a statute authorizing such action, and that a governmental authority is not liable for-consequential damages resulting to adjoining property in condemnation proceedings.
Beginning with the case of Board of Commissioners of Hamilton County v. Mighels, 7 Ohio St., 109, this court has consistently held that a county is not liable for the negligent acts of its officers, in the absence of a statute creating such liability, and has held that there is no liability in condemnation proceedings for consequential damages to adjoining property. Smith v. Erie Rd. Co., 134 Ohio St., 135, 16 N. E. (2d), 310.
However, from a perusal of the authorities, it seems that by consequential damages is meant the lessening of the value of property adjoining land which has been condemned, because of the use to which the land condemned has been subjected. However, this court has maintained, without equivocation, that if property is taken by a governmental authority, either completely or pro tanto, Section 19 of Article I of the Ohio Constitution guarantees a right of compensation to the owner of the property so taken.
In the case of City of Norwood v. Sheen, Ear., 126 Ohio St., 482, 186 N. E., 102, 87 A. L. R., 1375, the first two paragraphs of the syllabus read as follows:
“1. Any direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and con *422 trol of the owner over it, is a taking of his property, for which he is guaranteed a right of compensation by Section 19 of the Bill of Rights. (Lake Erie & Western Rd. Co. v. Commissioners of Hancock County, 63 Ohio St., 23, approved and followed.)
“2. A petition set forth in substance the erection, by private parties, of a sewer under the surface of a street in a private subdivision, all of the drainage from which street flowed onto the premises of the plaintiff’s decedent; that such street was subsequently dedicated to a certain city and accepted by such city for street purposes; that such sewer was controlled and maintained by such city as part of its public sewer system; and that such city so used such sewer and drainage facilities as to cause the flooding and pollution, with filth, excrement, waste, drainage and unwholesome water, of such land for a period of some four years. The petition further showed that the city, at the end of such period, built a proper storm and sanitary sewer and abated the condition theretofore existing. Held, that such petition states a cause of action against such city for temporary appropriation of private property to a public use. ’ ’
In her opinion in that case, Judge Allen cited with approval 10 Ruling Case Law, 66, Section 58, which reads as follows:
“If the land, ‘in its corporeal substance and entity,’ is property, still, all that makes this property of any value is the aggregation of rights or qualities which the law annexes as incidents to the ownership of it. The constitutional prohibition must have been intended to protect all the essential elements of ownership which make property valuable. Among these elements is, fundamentally, the right of user, including, of course, the corresponding right of excluding others from the use. A physical interference with the land, which substantially abridges this right, takes the owner’s property to just so great an extent as he is thereby deprived of his right. To deprive one of the use of his land is depriving him of his land; and the private injury is thereby as completely effected as if the land itself were physically taken away. Accordingly it has been held that any use of land for a public purpose, which inflicts an injury upon adjacent land such as would have been actionable if caused by a private owner, is a taking within the meaning of the Constitu *423 tion and can not be authorized by the Legislature without compensation.”
In the case of Smith v. Erie Rd. Co., supra, the first paragraph of the syllabus reads:
“Under Section 19, Article 1, of the Constitution, which requires compensation to be made for private property taken for public use, any taking, whether it be physical or merely deprives the owner of an intangible interest appurtenant to the premises, entitles the owner to compensation.”
In the opinion, Judge Williams quoted from the case of City of Mansfield v. Balliett, 65 Ohio St., 451, 63 N. E., 86, 58 L. R. A., 628, as follows:
“The value of property consists in the owner’s absolute' right of domain, use, and disposition for every lawful purpose. This necessarily excludes the power of others from exercising any dominion, use or disposition over it. Hence, any physical interference by another, with the owner’s use and enjoyment of his property, is a taking to that extent. To deprive him of any valuable use of his land is to deprive him of his land, pro tanto. So that, the principle of the Constitution is as applicable where the owner is partially deprived of the uses of his land, as where he is wholly deprived of it. Taking a part is as much forbidden by the Constitution as taking the whole.”
Judge Williams also stated in his opinion:
“In some of the early cases in this country, the courts, adhering to the conception of property as the thing owned, construed the taking alluded to in state Constitutions to- be a ‘ taking altogether, ’ an appropriation and dispossession of the owner, which deprived him of the corpus of the property, and compensation was limited accordingly. The broader view, which now obtains generally, conceives property to be the interest of the owner in the thing owned, and the ownership to afford the owner the rights of use, exclusion and disposition. Under this broad construction there need not be a physical taking of the property or even dispossession; any substantial interference with the elemental rights growing out of ownership of private property is considered a taking.”
If Milton and Clara and Harry in their amended petitions *424 had simply claimed a taking of their property because its value had been lessened without other interference or physical encroachment upon it, doubtless their claims would have been denied as damnim absqiie injuria, but from the allegations in the amended petitions, it is quite apparent that plaintiffs are alleging that there has been a substantial interference with their elemental rights growing out of the ownership of private property. They allege the various acts of interference and charge a talcing of their property, at least pro tanto. They do not claim that the board was negligent or did anything other than its rightful duty, but, nevertheless, plaintiffs claim that the board has taken their property rights as a necessary incident to the performance of a public function. Under such circumstances, Section 19, Article I of the Constitution, requires just compensation to be paid to the property owners.
In the case of Harry, the property was personal, but Section 19, Article I of the Ohio Constitution, makes no distinction between real and personal property. It provides:
“Private property shall ever be held inviolate but subservient to the public welfare. * * # and * * * where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner. ’ ’
It must be remembered that the present actions are not based upon either negligence or upon the maxim, sic utere tuo ut alienum non laedas, which, translated, means, so use your own that you do not injure that of another. They are based solely upon the doctrine of appropriation by encroachment.
The cases are legion to the effect that a taking under the power of eminent domain does not include the personal property lying on the premises taken but not affixed thereto, and that damages for injury to such personal property or the expense of removing it from the premises taken is not a proper element of compensation. The reason for this rule is that in an appropriation proceeding the specific property taken is designated and all other property is excluded, so that one may have compensation only for the property taken and for any damage to the residue.
*425 In the present cases, however, according to the language of the amended petitions, the encroachment by reason of the improvements upon the county’s property deprives the owners of the adjoining property of the use of their property, and to that extent that property is taken pro tanto, not only as to the realty but as to the personal property rightfully thereon.
There is very little authority concerning the taking of personal property under the circumstances of the present cases, but we call attention to the case of Superior Coal & Builders Supply Co. v. Board of Education of Dayton, Ky., 260 Ky., 84, 83 S. W. (2d), 875, where it is stated as follows:
“These parties own land near each other in the city of Dayton, their properties are both drained by the same natural watercourse; the land of the defendant being about 150 feet down stream from that of the plaintiff. In the petition it is alleged:
“ ‘The defendant early in the year 1933 altered and changed the grade and topography of its said real estate, and substituted for a natural watercourse thereon, a drain of such insufficient and small dimensions as to cause water to accumulate in large quantities during heavy rainfalls, and to be discharged upon plaintiff’s said real estate, flooding the same and destroying the commodities stored thereon.’
“The defendant contends that the action of the trial court is correct because its property does not adjoin that of the plaintiff, because it is an arm of the state, and because it has no money except that raised by taxation for specific governmental purposes which can not be diverted. Ky. Const., Section 180. That is true, but if it has taken in whole or in part the property of its neighbor, it must pay therefor (Sections 13 and 242, Ky. Const.), even though it must raise by taxation the money to do so. Whether these properties adjoin or not is not the charge plaintiff tried to make, but that defendant took the plaintiff’s property, and, so far as its being an arm of the state is concerned, it is still responsible if it took the plaintiff’s property. The Constitution was written to protect the citizen from the improper acts of the state, its arms and its officers; nor does it make any difference that a portion of the plaintiff’s property *426 was personal property, as Sections 13 and 242, Ky. Const., apply to both real and personal property. ’ ’
In the present cases, we are dealing with demurrers to amended petitions and, therefore, cannot forecast what the evidence will be upon the trial of these cases, whether the evidence produced will show that the property of plaintiffs was not damaged by the actions of the county, or that the damage resulted solely from a vis major, or any other facts which may relieve the county of liability. We are simply deciding that the demurrers to the amended petitions should have been overruled.
We are in accord with the following language of Judge Nichols of the Court of Appeals in his dissenting opinion in the present causes:
“Candor, however, compels me to state that confusion has been injected into this case by counsel for the respective plaintiffs by reason of the language contained in the prayer for relief, which language may have induced the majority members of this court to believe that each action against the county commissioners was one for damages arising out of tort. The per curiam [sic] opinion so states.
“Reference to the prayer of each petition does disclose that the plaintiffs are asking for judgment in the respective amounts stated therein.
“It is quite clear that such prayer for judgment is not a proper prayer conformable to the allegations of each petition. The prayer should have been merely for the impaneling of a jury to assess the amount of compensation to which the jury finds each plaintiff is entitled by reason of the alleged appropriation pro tanto of property of the respective plaintiffs.
“Upon consideration of a demurrer to a petition the court will look only to the allegations of fact stated therein, without reference to the prayer, in determining whether the petition states a cause of action for some relief prayed for therein.
“The prayer in each of these petitions does ask ‘for such other and further relief at law or in equity as to which they (or he) may be found entitled.’ Under such general prayer for relief the plaintiffs were entitled to have a jury impaneled to determine the compensation due them for the appropriation pro tanto of their respective properties.”
*427 The judgments of the Court of Appeals are reversed, and the causes are remanded to the Court of Common Pleas for further proceedings in accordance with this opinion.

Judgments reversed and causes remanded.

Weygandt, C. J., Zimmerman and Bell, JJ., concur.
Taet, Matthias and Herbert, JJ., concur in the judgment as to cause No. 35217 but dissent as to cause No. 35218.