CRANE ET AL. *v.* BRINTNALL ET AL.

[Cite as Crane v. Brintnall (1972), 29 Ohio Misc. 75.]

(No. 21028—Decided January 6, 1972.)

Common Pleas Court of Medina County.

*Messrs. Palmquist & Courtney,* and *Mr. Donald J. Shell,* for the plaintiffs.

*Mr. J. Richard McMannis,* prosecuting attorney, and *Mr. Roger R. Ingraham,* for the defendant Board of County Commissioners.

78

WINTER, J. Turning first to defendants' motion to dismiss which was made at the close of plaintiffs' case and upon which ruling was reserved, counsel for the defendant ably argued that inasmuch as plaintiffs' witness, the Sanitary Engineer as an expert in his field, testified that the package treatment plants met all state specifications and were tested and approved yearly they were functioning properly. Yet, the same witness, being questioned by the court over objection of the defendant, admitted that at times the degree of treatment "wasn't what was expected. There could be a degree of contamination."

Counsel for the defendant further argued that improperly functioning septic tanks and erosion, as a result of the scraping and baring of certain lands in the process of building construction in the area, contributed to the silting in process of Sleepy Hollow Lake; and that the resultant lowering of the lake's water level was "one of the reasons you have the growth of algae."

Other reasons were offered and other arguments given but it appears to this court that considerable confusion has been injected into the record and that the real issue in this matter may have been overlooked.

In the case of *Lucas et al, Appellants,* v. *Carney et al.,* 167 Ohio St. 416, Judge Stewart said:

"The issue presented * * * is whether a county is liable for an invasion and taking of the substantial property rights of a person by an act of such county strictly within the scope of its authority and unattended by any circumstances of negligence or malice."

In the case of *Smith* v. *Erie Rd. Co.,* 134 Ohio St. 135, Judge Williams quoting from the case of *City of Mansfield* v. *Balliett,* 65 Ohio St. 451, stated that:

"* * * any physical interference by another, with the owner's use and enjoyment of his property, is a taking to that extent. To deprive him of any valuable use of his land is to deprive him of his land, pro tanto."

Judge Williams, in the *Smith* case, *supra,* went on to say that the broader view, which now obtains generally, conceives property to be the interest of the owner in the thing owned:

"Under this broad view of construction there need not be a physical taking of the property or even dispossession; any substantial interference with the elemental rights growing out of ownership of private property is considered a taking."

And, in the case of *City of Norwood* v. *Sheen, Exr.,* 126 Ohio St. 482, the court held that a petition stated a cause of action against a city for *temporary* appropriation of private property to a public use, when it was set forth therein that the erection of a sewer under a street in a pri-

vate subdivision by private parties, where the drainage from a street flowed onto premises of the plaintiff's decedent, and that such street was subsequently dedicated to the city and that such sewer was controlled and maintained by such city as a part of its public sewer system; and that the petition further showed that the city, subsequently built a proper storm sewer and abated the condition theretofore existing.

Referring again to the case of *Lucas et al., supra*, the court, quoted from Section 19, Article I of the Ohio Constitution:

"Private property shall ever be held inviolate but subservient to the public welfare * * * and * * * where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."
and further stated:

"It must be remembered that the present actions are not based upon either negligence or upon the maxim, sic utere tuo ut alienium non laedas, which, translated, means, so use your own that you do not injure that of another. They are based solely upon the *doctrine of appropriation by encroachment*." (Emphasis ours.)

In the opinion of this court the doctrine of appropriation by encroachment was enunciated by the Ohio Supreme Court in the case of *Lake Erie & Western Rd. Co.* v. *Commissioners of Hancock County*, 63 Ohio St. 23, as follows:

"Any direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it, is a taking of his property, for which he is guaranteed a right of compensation by section 19 of the Bill of Rights."

On page 31 of the opinion the court went on to say:

"By the location and construction of this ditch *the property* of the railroad company *will be subjected to a perpetual easement*, with which it cannot interfere, however much it may desire, or be to its interest, to have it removed

or changed; *and, the company is deprived, in some measure, of that absolute right of use and dispostion of its land which is incident to the ownership of property.*" (Emphasis ours.)

In the case at bar the defendant Board apparently believes that, while it regrets the plight of the plaintiffs, "* * * This lake was the victim of the area * * * and the development of Brunswick * * *." The defendant Board should be absolved from compensating for a taking of property within the meaning of the law because of the fact that its operation of the package sewer treatment plants was a more satisfactory method of treating sewage than by the use of septic tanks, even though, "* * * these plants were not the last words * * * but at the time they were the best thing available." And further, because the said operation of the treatment plants by the defendant Board was for the benefit of the plaintiffs, among others.

The court is of the opinion that, while this type of thinking may be honest and sincere, it is nonetheless typical of those well meaning self serving declarations that seemingly account for the current status of our so-called fight against pollution. This rationale that "pollution is the price of progress" may well give rise to the "too little and too late" doses of the remedies that are currently being administered to a sick ecology in a world that may be going down the path of technologically outsmarting itself!

Members of the legal profession are well aware of the fact that society has probably witnessed the last execution as punishment for a capital crime. We apparently have no quarrel with the philosophy that underlies this evolvement of the purpose and objective in the imposition of sentence and penalty for violations of the law and the commission of crimes against the state. It makes more sense to rehabilitate than to annihilate! With this thought in mind it becomes difficult to justify a doctrine of full employment at any price that actively, legally and proudly contributes to the inevitable and inexorable elimination of mankind by the discharges of industrial waste and pollution which follow in the wake of that never ending quest for a greater GNP. All of this is to say, that, to this court, this sort of

thinking effectually indicates a greater concern for the salvation and future of a potentially dangerous felon than it does for the future and well being of scores of innocent law abiding citizens.

As Mark Twain said of the weather "Everyone talks about it, but no one does anything about it." The time to do something about pollution and contamination of the streams and natural water courses is now, whenever and wherever the cause arises. The law of Ohio tells us what to do in the case of a taking of, or encroachment upon, land which subjects it to a public use; prompt and strict enforcement of the law in such cases may have a salutary effect on other situations wherein something needs to be done.

The court finds that defendants' motion to dismiss is not well taken and that it should be and hereby the same is overruled.

While the foregoing ruling may, in effect, be dispositive of this cause definitive findings and ruling remain to be set forth.

All that has been heretofore stated with respect to defendants' motion is reincorporated herein. As has been previously indicated, the sole issue before this court is the question of whether there was a taking of plaintiffs' property by the defendant Board.

The term "taking" as used in the Constitution of Ohio:

"* * * has been generally construed by the courts as not limited to the land actually occupied by the improvement, and as including all other property which is injuriously affected thereby. Thus, it is held that the overflowing of lands situated below a drainage improvement, on account of an insufficient outlet therefor, whereby such lands are damaged or injured, is within the constitutional inhibition against the taking of land without adequate compensation being made therefor. The term also includes such items of cost or expense as may be necessarily incurred by a land owner in connection with the construction of the improvement of his premises." (See 18 Ohio Jurisprudence 2d, page 384.)

Thus, in the instant case the discharge of effluent from

a package treatment plant into the natural water course that drains into plaintiffs' lake is a taking to the extent that such discharge may deprive the owners of that absolute right of use and disposition of their property.

Reference has been made to plaintiffs' failure of proof of the taking. In this connection it may be noted that a mere allegation in the complaint in the instant case would be sufficient to establish a cause of action where a subservient lake, or other body of water, acts as the repository for effluent discharged from a sewage treatment plant. The rule in Ohio is that "courts will take judicial notice of whatever is commonly or generally known or ought to be generally known within the limits of their jurisdiction, for the court is presumed to know what is of common knowledge." (21 Ohio Jurisprudence 2d, page 37.) Certainly, the operation of the law of gravity and the fact that water will seek its lowest level is a matter of common knowledge, the fact of which need not bear the burden of proof where the property taken has been shown to be subservient to the upper riparian effluent discharge, and the court so finds..

In this connection it must be noted that defendant Board by its own act passed judgment in this cause when, on March 6, 1961, by unanimous vote it adopted the resolution establishing Medina County Sewer District No. 100 wherein it is stated that the creation of a single sewer district would permit the construction of a treatment plant which would:

"* * * better safeguard the health of the residents of the county by treating to a higher degree the effluent * * *; would cure a problem of excessive algae in certain streams and in Sleepy Hollow Lake;"

Accordingly, the court finds that the plaintiff-owners were deprived of the use and enjoyment of their property by the encroachment of the defendants in the operation of sewage treatment plant No. 4; that such encroachment was a taking, pro tanto, of the property so encroached upon; and that the plaintiffs are entitled to institute an action and have a jury impaneled to determine the compensation due them for the pro tanto appropriation of said property.