[Cite as *State ex rel. Lee v. Plain City*, 2017-Ohio-8931.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO EX REL. FRANK LEE, et al., | : | CASE NOS. CA2017-01-002 |
| | : | |
| Relators-Appellants, | : | O P I N I O N |
| | : | 12/11/2017 |
| - vs - | : | |
| | : | |
| THE VILLAGE OF PLAIN CITY, | : | |
| Respondent-Appellee. | : | |
| | : | |

CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CVH 20140160

Steve J. Edwards, 4030 Broadway, Grove City, Ohio 43123, for relators-appellants, Frank and Twila Lee

Mazanec, Raskin & Ryder Co., L.P.A., Michael S. Loughry, James A. Climer, Frank H. Scialdone, 175 South Third Street, Suite 1000, Columbus, Ohio 43215 and Isaac Wiles Burkholder & Teetor, LLC, Paul Michael LaFayette, Two Miranova Place, #700, Columbus, Ohio 43215, for respondent-appellee

        **PIPER, J.**

        {¶ 1}  Frank and Twila Lee, relator-appellants, appeal from the decision of the

Madison County Court of Common Pleas, which granted summary judgment in favor of

respondent-appellee, the Village of Plain City, Ohio ("Plain City" or "the village").  For the

reasons discussed below, this court affirms the lower court's decision.

{¶ 2}  This case involves a longstanding property dispute.  In 2004 the Lees contracted with homebuilder Manor Homes, to build a residential home in the Darby Estates platted subdivision in Plain City.  Prior to the purchase, the Lees reviewed a plot and grading plan depicting their lot.  The plan depicted a 20-foot public utility easement, running north/south, on the western portion of the lot.  The plan further depicted a pre-existing underground sewer line running north/south through the center of this easement and approximately 10 to 12 feet away from the foundation walls of the Lees' future home.  The sewer line, which exclusively drained storm water, began at the street and led into a water detention pond immediately behind the home.  Manor Homes allegedly advertised this pond as a "wetland preserve" and the Lees paid an upcharge of $5,000 on the lot price for the benefit of its proximity.

{¶ 3}  During the home's construction, the parties discovered that the sewer line was not centered in the easement as depicted in the plan.  Instead, the sewer ran within several feet of the foundation wall of the Lees' home.  The county and village refused to grant the Lees an occupancy permit because of the home's proximity to the sewer.

{¶ 4}  Manor Homes, which had installed the sewer system in the subdivision at some earlier time, submitted a plan to relocate the sewer away from the home to Plain City.  However, an engineer disapproved of this plan, and recommended the installation of a new sewer line.  Following that recommendation, and with the approval of Plain City, Manor Homes installed a new sewer line.

{¶ 5}  Manor Homes disconnected the old sewer line and left it in the ground.  The company installed underground dams and concrete collars to protect the Lees' home from water migration.  These protective structures are located partially in the public utility easement and partially on the Lees' property.  A representative of Plain City monitored Manor

Homes' work.

{¶ 6} In 2006, the Lees filed a complaint against Manor Homes in federal court ("the federal litigation"). The complaint alleged that Manor Homes, while constructing the Lees' home, improperly placed the home's foundation within three feet of a sewer line, which violated Plain City's building codes. The Lees further alleged that Manor Homes performed their contract obligations in an unworkmanlike manner, which resulted in cracks in the basement walls, failure of the yard to drain properly, and excessive water leakage into the new home. The Lees asserted numerous legal claims, including breach of contract, breach of warranties, and negligence. The Lees additionally raised a claim alleging that Manor Homes committed a trespass by "digging up the ground in plaintiffs' backyard and installing permanent concrete like structures underground as part of the public storm water system."

{¶ 7} Manor Homes thereafter filed a third-party complaint against Plain City, arguing that to the extent the Lees recovered against it, Manor Homes was entitled to indemnification and contribution from the village. In 2009, the Lees, Manor Homes, and Plain City settled the federal litigation. As part of the settlement agreement, the parties agreed to a mutual release of claims.

{¶ 8} In 2014, the Lees filed this action, asserting three claims against the village. First, the Lees pled an action in mandamus alleging that the village failed to enforce its building codes or ordinances with respect to the proximity of the home to the sewer line, that the placement of the sewer line and dam structures constituted an unconstitutional taking, and requesting that the court compel the village to initiate a proceeding to compensate the Lees.[1] Second, the Lees set forth a declaratory judgment claim asking the court to

---

1. "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings when an involuntary taking of private property is alleged. Any direct encroachment upon land that subjects it to a public use that excludes or restricts the dominion and control of the owner over it is a taking of property, for which the owner is guaranteed a right of compensation under Section 19, Article I of the Ohio Constitution." *State ex rel.*

determine whether the Lees or the village owned the sewer lines and dams. Third, the Lees asserted a nuisance claim, which alleged that the water detention pond produced stagnant water, rotting vegetation, collected trash, and was a breeding ground for mosquitoes. The Lees asked for an injunction prohibiting the village from diverting storm water into the pond.

{¶ 9} Plain City moved for summary judgment, arguing that the federal litigation settlement agreement precluded the Lees' claims. In addition, and with respect to the nuisance claim, Plain City argued that it did not own the detention pond and that the Lees failed to join the pond's owner, an indispensable party. In support of summary judgment, Plain City offered the affidavit of its administrator, Kevin Vaughn. The Lees moved to strike Vaughn's affidavit on various evidentiary grounds, including lack of personal knowledge and hearsay.

{¶ 10} The trial court rendered judgment in favor of Plain City on all claims. The court found that the Lees released Plain City from "all claims related to the sewers and dams." The court specifically stated that the settlement agreement released Plain City from the mandamus and declaratory judgment claims. With respect to the nuisance claim, the court noted that Vaughn's affidavit averred that the village did not own the detention pond and that the pond was owned by a private citizen. The court found this portion of Vaughn's affidavit admissible under an exception to hearsay. The court then granted summary judgment in favor of Plain City on the nuisance claim.

{¶ 11} Plain City did not assert a counterclaim asking for a declaratory judgment. Nevertheless, after dismissing the Lees' declaratory judgment action, the court commented on some of the issues raised in the request for declaratory judgment. The court stated that

---

*Doner v. Zody*, 130 Ohio St. 3d 446, 2011-Ohio-6117, paragraph four of the syllabus, citing *State ex rel. Shemo v. Mayfield Hts.,* 95 Ohio St.3d 59, 63 (2002); and *Norwood v. Sheen*, 126 Ohio St. 482 (1933).

Plain City owned the sewer lines within its utility easement and that the abandoned sewer line was "of no consequence" to the Lees and "at best a technical trespass."

{¶ 12} The Lees appeal, raising six assignments of error. This court will address certain assignments of error collectively.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE LEES' TAKINGS/MANDAMUS CLAIM BASED ON THE DEFENSE OF RELEASE.

{¶ 15} Assignment of Error No. 3:

{¶ 16} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE LEES' CLAIM FOR A DECLARATORY JUDGMENT BASED ON THE DEFENSE OF RELEASE.

{¶ 17} Assignment of Error No. 6:

{¶ 18} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE LEES' NUISANCE CLAIM.

{¶ 19} In their first, third, and sixth assignments of error, the Lees argue that the settlement agreement did not release Plain City from the claims raised in this action and therefore the trial court should not have granted summary judgment. An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court. *Flagstar Bank, FSB v. Sellers*, 12th Dist. Butler No. CA2009-11-287, 2010-Ohio-3951, ¶ 7. Summary judgment is proper when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 20} A settlement agreement is designed to terminate claims by preventing or

ending litigation. *Stewart v. Vivian*, 12th Dist. Clermont No. CA2015-05-039, 2016-Ohio-2892, ¶ 75. The result of a valid settlement agreement is a contract between parties. *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376 (1997). The construction of a written contract is a question of law, which this court reviews de novo. *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, ¶ 28.

{¶ 21} "In construing the terms of a written contract, the primary objective is to give effect to the intent of the parties, which we presume rests in the language that they have chosen to employ." *Id.* at ¶ 29. Where the terms of the contract are clear and unambiguous, a court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55 (1989). Additionally, "[w]here possible, a court must construe the agreement to give effect to every provision in the agreement." *In re All Kelley & Ferraro Asbestos Cases* at ¶ 29.

{¶ 22} The relevant portion of the settlement agreement provides:

> **6.    Mutual Release:** In consideration for the payments and covenants set forth in this Agreement, the Parties and their respective affiliates, related companies, heirs, executors, administrators, beneficiaries, principals, employees, fiduciaries, subsidiaries, attorneys, successors, predecessors, representatives, partners, agents, and assigns, hereby RELEASE, ACQUIT AND FOREVER DISCHARGE each other, as well as each other's affiliates, related companies, heirs, executors, administrators, beneficiaries, employees, fiduciaries, subsidiaries, attorneys, successors, predecessors, representatives, partners, principals, agents and assigns, as well as all other defendants and third-party defendants named in the lawsuit, from any and all manner of action, damages, losses, costs, actions, causes of action, claims, liens, demands, charges, fees, debts, obligations, attorney fees, interest, and any and all liabilities of any nature and description, both known or unknown, suspected or unsuspected, foreseen or unforeseen, real or imaginary, actual or potential, whether arising in law or in equity, arising from any act or omission from the beginning of time through the date of this Agreement. Any claim or right that might arise under this Agreement, however, is not so released.

Mandamus

{¶ 23} The Lees contend that the settlement agreement did not preclude the mandamus action because the village had not yet formally accepted municipal responsibility for the new sewer line installed at the time the parties signed the settlement agreement. Additionally, the Lees claim that Plain City had not yet "refused to enforce its ordinances" relevant to the sewer. The Lees' primary evidence in support of their argument is a 2006 letter from Plain City's attorney to Manor Homes in which the village informs Manor Homes that the village has not accepted the new sewer and will not until certain conditions are met, e.g., that the new sewer line and other infrastructure are located within a utility easement allowing access and that all work is verified to have been completed according to approved plans.

{¶ 24} Plain City argues that the Lees were aware of the sewers and other infrastructure on their lot since at least 2006, that any takings claim relative to those structures would have accrued at that time, and that the Lees released Plain City from any such claims in the settlement agreement. The village argues that the Lees lack any legal basis for arguing that a taking has not yet occurred where a public utility has physically intruded on private property but the utility has not been formally accepted by the municipality.

{¶ 25} Having reviewed the settlement agreement, this court concludes that the agreement precluded the mandamus claim. The Lees do not dispute that they were aware of the sewers and other infrastructure on their property when they filed the federal litigation. In fact, Manor Homes' decision to place the home so close to the sewer line was the central focus of that lawsuit. Moreover, the Lees pled that the infrastructure installed by Manor Homes was a "trespass." Likewise, the sewers' location is the central focus of the mandamus claim.

{¶ 26} The Lees and Plain City mutually released one another from all claims "both

known or unknown, suspected or unsuspected, foreseen or unforeseen, real or imaginary, actual or potential." Given the Lees' knowledge of the sewers, we find that this broad language encompasses any potential mandamus action against the village asking the court to compel the village to compensate the Lees for the location of the sewer infrastructure. Moreover, the claims raised in the Lees' mandamus action have a clear and logical connection to the damages alleged in the federal litigation. This court concludes that the Lees released Plain City from any potential action in mandamus in return for the consideration received in settlement.

{¶ 27} However, the Lees argue that an Ohio Supreme Court decision establishes that their mandamus claim did not accrue until sometime after the parties executed the settlement agreement because the takings claim was not viable when the sewers and infrastructure were installed in 2006 and earlier. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117. In *Doner*, the spillway of a lake, constructed in 1997 and managed by the Ohio Division of Natural Resources ("ODNR") repeatedly caused flooding in privately owned land. *Id.* at ¶ 16-17. In 2009, the landowners petitioned for a writ of mandamus compelling the agency to initiate proceedings to accommodate them for the physical taking of their land. *Id.* at ¶ 16.

{¶ 28} ODNR argued that a four-year statute of limitations on takings claims barred the mandamus action because ODNR completed construction of the spillway in 1997 and all events which resulted in the agency's liability to the landowners was then complete. *Id.* at ¶ 36, 50. The court reviewed cases involving takings claims related to flooding or water damage and in doing so focused on whether the allegedly tortious conduct occurred on the defendant's or property owner's land. In those cases where the tortious act occurred on the property owner's land, no tolling would likely occur because the property owner should have "direct and immediate notice of any alleged taking as well as the cause of the taking." *Id.* at ¶

46. The court contrasted such cases with those where the defendant engaged in conduct on their own property that caused flooding or water damage and the defendant retained control of the property. *Id.* at ¶ 47. In these cases of a "continuing trespass," the defendant's ongoing control tolls the running of the statute of limitations period. *Id.* at ¶ 45.

{¶ 29} *Doner* is distinguishable as it involved a continuing trespass by repeated flooding of the landowners' property resulting from a state agency's construction of a new spillway on its land and its control over the level of a lake. Here, however, there is a permanent trespass, as the sewers and other infrastructure were in place and on the Lees' property as of 2006, the Lees had "direct and immediate notice" of the presence of the structures, and the structures have remained in place since with no further action by the village. In addition, in *Doner*, 10 to 15 years of hydrologic data was necessary to decide whether the flooding was so significant as to constitute a taking. *Id.* at ¶ 49-50. Here, however, no further information was necessary for the Lees to determine where the storm sewers were located.

{¶ 30} The Lees argue that the village had not yet accepted the new sewer line and until the village did so, not all events had taken place which established the village's liability. This court disagrees. Again, the Lees were aware of the sewers in 2006 and the location of the public utility easement. They had the opportunity in the 2009 settlement to resolve any issues with respect to the village, including the village's acceptance of the sewer line and any easement that the village may need to obtain. They did not use that opportunity and instead, in a negotiated settlement, released all claims against the village, whether "known or unknown," "seen or unforeseen." The Lees could have resolved these issues with the village as part of the settlement but did not. Accordingly, this court overrules the Lees' first assignment of error.

Declaratory Judgment

**{¶ 31}** The Lees argue that they did not release Plain City from the declaratory judgment claim because "several facts occurred" after the settlement. These occurrences are (1) the Lees sought to sell their home and make a full disclosure to any buyer but were uncertain whether they or the village owned the sewer improvements underneath their property, (2) the Lees were "uncertain" as to whether the village "had done anything to enforce the promises it made to the Lees" in the 2006 letter, and (3) in 2013, Plain City informed the Lees' counsel that it was uninterested in further discussions with respect to their concerns about their property.[2]

**{¶ 32}** The Lees' claim for declaratory judgment asked the court to determine who owns the underground structures, which were in place in 2006 when the Lees commenced the federal litigation. Having reviewed the settlement agreement, this court concludes that the Lees released Plain City from the declaratory judgment claim, which was well within the ambit of the issues raised in the federal litigation. The Lees claim that events have occurred since the parties have settled. However, the principal event the Lees refer to is an alleged promise in a letter written approximately three years before the settlement agreement. Moreover, the settlement agreement specifically referenced that letter and required Manor Homes to make certain repairs consistent with the letter. The Lees had the opportunity to resolve any issues with respect to the ownership of the underground structures via the settlement agreement but did not. Then, for the consideration they received in settlement, the Lees broadly released Plain City from all claims. Consequently, this court concludes that the settlement agreement precluded the Lees' declaratory judgment claim. This court

2. With respect to the 2006 letter, Plain City directed the letter to Manor Homes, although the Lees' were included in the communication. It is unclear what "promises" the Lees are referring to but we assume the Lees construed the letter as an agreement to purchase an easement from them at some point in the future.

overrules the Lees' third assignment of error.

The Nuisance Claim

{¶ 33} The Lees argue that the court erred in dismissing their nuisance claim.[3] The Lees argue that the settlement agreement did not preclude the nuisance claim because the record contains summary judgment evidence showing that the conditions around the water detention pond "worsened" since 2009 and had become a nuisance only after the parties signed the settlement agreement.

{¶ 34} This court concludes that the nuisance claim against Plain City is also precluded by the settlement agreement. The detention pond behind the home was the subject of at least one claim in the 2006 federal litigation. Specifically, the Lees asserted that Manor Homes fraudulently represented that the pond was a wetland preserve, when in fact Manor Homes knew that the area was a storm water detention pond.

{¶ 35} The Lees claim that the conditions worsened after 2009. However, implicit in this argument is the concession that the pond was a problem prior to the settlement. Again, the Lees had the opportunity in the 2009 settlement to resolve any concerns with respect to the pond. Yet they released Plain City from all claims " of any nature and description, both known or unknown, suspected or unsuspected, foreseen or unforeseen, real or imaginary, actual or potential." Thus, while the conditions may have worsened, the Lees released Plain City regardless of whether they could foresee the conditions worsening or not. Accordingly, this court overrules the Lees' sixth assignment of error.

{¶ 36} Assignment of Error No. 2:

---

3. The Lees suggest that the court's decision was ambiguous as to its basis for dismissing the nuisance claim. Our reading of the decision suggests that the court resolved the claim based on the portion of the Vaughn affidavit it found admissible, i.e., that the Lees failed to join the owner of the detention pond, an indispensable party. We do not address that issue as we may affirm the decision of the court so long as it was correct on other grounds. *Butler v. Wyndtree Housing Ltd. Partnership*, 12th Dist. Butler No. CA2011-03-056, 2012-Ohio-49, ¶ 71.

- 11 -

{¶ 37} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE LEES' TAKINGS/MANDAMUS CLAIM BASED UPON THE DEFENSE OF STATUTE OF LIMITATIONS.

{¶ 38} Given our resolution of the Lees' first assignment of error, we find that the Lees' second assignment of error is moot. *See* App.R. 12(A)(1)(c). Consequently, this court overrules the Lees' second assignment of error.

{¶ 39} Assignment of Error No. 4:

{¶ 40} THE TRIAL COURT ERRED IN GRANTING A DECLARATORY JUDGMENT HOLDING THAT PLAIN CITY WAS THE OWNER OF THE NEWLY CONSTRUCTED STORM SEWER LINE; THAT THE ABADONED SEWER LINE IS OF NO CONSEQUENCE AND APPEARS TO CAUSE NO HARM TO [RELATORS'] PROPERTY; THAT PLAIN CITY HAS OFFERED TO REMEDY THE ABANDONED SEWER LINE AND THAT THE LEES OWN THE BURIED PIPE AND THE MIGRATION PREVENTION DAMS.

{¶ 41} The Lees argue that the court erred by dismissing their declaratory judgment action but then, nonetheless, announcing that Plain City owns the sewer line within the public utility easement, that the abandoned sewer line is "of no consequence" to the Lees and that the Lees own the "buried pipe" and migration prevent dams.

{¶ 42} The relevant portions of the trial court's decision read:

> This Court grants [the Village's] Motion for Summary Judgment in the [Lees'] mandamus and declaratory judgment claims.
>
> * * *
>
> The Village argues that it is entitled to a declaration that it has a valid easement through the [Lees'] property for a sewer line and that it owns the sewer line inside the easement. This Court agrees that [the Village] owns the sewer line contained [within] its valid easement on [the Lees'] property. The abandoned sewer line is of no consequence and appears to cause no harm to [the Lees'] property. Its presence is at best a technical trespass which the Village has offered to remedy. The village

does not dispute that the Lees own the buried pipe and the migration prevention dams.

{¶ 43} This court concludes that the lower court could not dismiss the declaratory judgment action while also issuing conclusions of fact or law concerning the subject of the declaratory judgment action. However, we find no reversible error. The court dismissed the declaratory judgment and therefore, its comments regarding the ownership of the new sewer line, the abandoned line, and other infrastructure were more akin to collateral observations on the case in the nature of dicta.[4] Adverse dicta are not appealable. *Alesi v. Warren Cty. Bd. of Commrs.*, 12th Dist. Warren Nos. CA2013-12-123, CA2013-12-124, CA2013-12-127, CA2013-12-128, CA2013-12-131, and CA2013-12-132, 2014-Ohio-5192, ¶ 51. This court overrules the Lees' fourth assignment of error.

{¶ 44} Assignment of Error No. 5:

{¶ 45} THE TRIAL COURT ERRED IN FAILING TO STRIKE THE AFFIDAVIT OF KEVIN VAUGHN AND/OR GRANTING SUMMARY JUDGMENT BASED ON THE AFFIDAVIT OF KEVIN VAUGHN.

{¶ 46} The Lees argue that the trial court erred in failing to strike the Vaughn affidavit because it contained averments inconsistent with Vaughn's deposition testimony, was not based on personal knowledge, contained hearsay, and contained inadmissible opinion evidence. Given our resolution of the first, third, and sixth assignments of error, we find that the Lees' fifth assignment of error is moot and is therefore overruled. *See* App.R. 12(A)(1)(c).

HENDRICKSON, P.J., and M. POWELL, J., concur.

---

4. Webster's defines obiter dictum as "an incidental and collateral opinion uttered by a judge and therefore not material to his decision or judgment and not binding." *Webster's Third New International Dictionary* 1555 (1993).