The STATE ex rel. LIVINGSTON COURT APARTMENTS, Appellant,

v.

CITY OF COLUMBUS, Appellee.

[Cite as *State ex rel. Livingston Court Apts. v. Columbus* (1998), 130 Ohio App.3d 730.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–158.

Decided Dec. 17, 1998.

*Shuler, Plank, Morgan & Brahm* and *James R. Leickly,* for appellant.

*Janet E. Jackson,* City Attorney, and *Christopher R. Yates,* Assistant City Attorney, for appellee.

DESHLER, Presiding Judge.

This is an appeal by relator, Livingston Court Apartments, from a judgment of the Franklin County Court of Common Pleas, overruling relator's objections and adopting a magistrate's decision denying relator's request for a writ of mandamus to compel respondent to commence an appropriation action.

Relator is the owner of the Livingston Court Apartments, located at 4101 East Livingston Avenue. On December 29, 1995, relator filed a complaint for a writ of mandamus against respondent, city of Columbus, asserting that the city had a duty to commence proceedings in the Franklin County Court of Common Pleas for the appropriation of relator's property pursuant to R.C. Chapter 163. It was alleged that the city had allowed the sanitary system under its control and operation to deteriorate and malfunction, causing raw sewage backup, on a regular basis, into the buildings of relator's property; the complaint further alleged that relator had demanded that the city correct the problem, but that the city had failed and refused to make repairs.

On October 3, 1996, the city filed a motion for summary judgment. Relator filed a cross-motion for summary judgment on October 21, 1996. On November 18, 1996, relator filed a motion for leave to amend its complaint for the purpose of adding a cause of action for negligence. By decision and entry filed January 15, 1997, the trial court denied both parties' motions for summary judgment, and further denied relator's motion for leave to amend its complaint.

The matter was referred to a magistrate, who conducted a bench trial beginning on August 11, 1997. The following findings of fact were set forth in the magistrate's decision, and while relator's objections challenged the magistrate's conclusions of law, neither party has objected to the findings of fact.

Relator owns the Livingston Court Apartments, a group of three apartment buildings located at 4101 East Livingston Avenue, Columbus. Fifteen of the apartments are townhouses with basements.

An eight-inch sanitary sewer line, owned by the city, runs under the parking lot of the apartment complex. The eight-inch line is connected at the north end to another sanitary sewer line, also owned by the city. The eight-inch sewer line was constructed in the early 1970s by an entity other than the city. Prior to December 31, 1984, the city acquired the eight-inch line, and it has been a dedicated city sanitary sewer line since that time.

There are three lateral sanitary sewer lines, owned by the relator, which connect the city's eight-inch line to each of the three apartment buildings. The sanitary sewer system is primarily a gravity-driven system, designed to transport sewage, one-way only, to the city's waste treatment facility. There is also a twelve-inch storm sewer line in relator's parking lot, which runs parallel to the city's eight-inch sanitary sewer line.

When water falls on the roofs of the apartment buildings, it is collected by roof gutters. The gutters carry water to downspouts, which in turn carry water to catch basins in the parking lot and catch basins in the lawn on relator's property. There are three catch basins in the parking lot, connected by the twelve-inch storm sewer line. The city's sanitary sewer system and relator's storm sewer system are not connected; all of the storm and surface water on relator's property is transported to the storm sewer system, and all of the sewage from relator's property is transported to the sanitary sewer system.

The city is responsible for maintaining sanitary sewer lines and the storm sewer lines in Columbus. Pursuant to the Columbus City Code, it is illegal for a person to connect surface runoff water drains or ground water drains to the city's sanitary sewer system. However, property owners (other than relator) in the vicinity of the apartments have illegally connected their perimeter water drains to the city's sanitary sewer system. The city has had notice of the illegal connections since at least June 1980.

Relator purchased the apartments on December 31, 1984. During heavy rains, storm water from other properties in the vicinity has run into the city's sanitary sewer system as a result of the illegal connections. The presence of storm water in the sewer system increases the volume of fluid that the sewer system must transport; the increased volume exceeds the sewer system's capacity, causing fluid to flow in the wrong direction and flood relator's basements.

On at least eight separate occasions since relator purchased the apartments, raw sewage from the city's sanitary sewer lines has simultaneously flooded all fifteen of relator's townhouse basements. The flooding of relator's basements

occurred on the following dates: November 10, 1985, July 22, 1989, July 12, 1990, July 13, 1992, August 5, 1995, May 8, 1996, May 31, 1997, and June 16, 1997. Each flooding incident was preceded by heavy rainfall in the vicinity of the apartments.

Relator complained to the city on each occasion that the basements flooded. The city has investigated the flooding but has always asserted that the city's sewer system is open and operating properly and that the flooding is caused by relator's three lateral sanitary sewer lines.

Contrary to the city's assertions, the magistrate found that the flooding of relator's basements is not caused by relator's lateral sewer lines; rather, the flooding is caused by heavy rains in conjunction with the illegal connections.

On the occasions when the basements have flooded, the depth of the sewage has measured from one to four feet in each of the basements, and the flooding has resulted in damage to the basements and their contents, including the tenant's personal property, the furnaces, the water heaters and sump pumps. Further, after each flooding, it takes relator two to three days to clean and disinfect all fifteen basements.

Because relator's tenants are not able to fully use the basements, relator has discounted the rent on the townhouses from approximately $525 per month to $405 per month. By virtue of the flooding, the value of the basements as well as the value of the apartments has been reduced. Relator has requested the city's permission to install a "flap gate" to prevent sewage from backing up into the city's eight-inch sewer line, but the city has refused permission.

On September 23, 1997, the magistrate rendered a decision denying relator's request for mandamus. In finding that relator was not entitled to relief in mandamus, the magistrate concluded that a taking had not occurred because the flooding at issue was the result of the city's inaction as opposed to a governmental act. The magistrate further concluded that, even assuming a taking had occurred, relator possessed a plain and adequate remedy in the ordinary course of law by way of an action in negligence.

On October 7, 1997, relator filed objections to the magistrate's decision. By decision filed December 19, 1997, the trial court denied relator's objections and adopted the decision of the magistrate. The trial court agreed with the magistrate's determination that a taking had not occurred, holding in part that "the City did not engage in an affirmative act of taking, but instead its inaction caused the harm complained of." The trial court further agreed with the magistrate's conclusion that relator had an adequate remedy in the ordinary course of law through a negligence action. The decision of the trial court was journalized by judgment entry filed January 13, 1998.

On appeal, relator sets forth the following four assignments of error for review:

"Assignment of Error No. 1

"Based upon the undisputed factual findings that the City of Columbus operates a sanitary sewer system which causes raw sewage to flood the owner's basements and restrict the owner's use of them, the trial court erred in that it should have concluded that the owner is entitled to a writ of mandamus compelling the City to initiate appropriation proceedings because the City has taken the owner's property and must compensate the owner for it.

"Assignment of Error No. 2

"The trial court erred in basing its denial of a writ of mandamus on the finding that the City of Columbus did not actively take owner's property. Whether the City of Columbus's operation of a sanitary sewer system which floods an owner's basement with raw sewage can be described as an action or an inaction is irrelevant to the inquiry of whether such flooding constitutes a taking of private property.

"Assignment of Error No. 3

"The trial court erred in its denial of a writ of mandamus because it believed the owner had an available remedy by filing a negligence action. When a city takes private property without compensating the owner or bringing an appropriation action against the owner, a writ of mandamus is the proper remedy and a negligence action is not a plain and adequate remedy available in the ordinary course of the law.

"Assignment of Error No. 4

"The trial court erred in failing to grant the owner leave to amend its complaint to add a negligence claim because the owner timely filed its motion for leave in good faith and because allowing the amendment would not have unduly prejudiced the City or unduly delayed the proceedings."

■   Relator's first, second, and third assignments of error are interrelated and will be addressed together. The primary issue raised by relator is whether the trial court erred in failing to grant relief in mandamus based on the court's determination that a taking had not occurred.

Section 19, Article I of the Ohio Constitution provides:

"Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be

taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."

In *Norwood v. Sheen* (1933), 126 Ohio St. 482, 186 N.E. 102, paragraph one of the syllabus, the Ohio Supreme Court held that "[a]ny direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the property owner over it, is a taking of his property, for which he is guaranteed a right of compensation by Section 19 of the Bill of Rights." See, also, *Summit Cty. Bd. of Commrs. v. Alderman* (Mar. 4, 1981), Summit App. No. 9826, unreported, at 3–4, 1981 WL 3888 (any act on the part of appropriating authority "which amounts to a substantial interference with the owner's property and which lessens or destroys the value of that property or which abridges the owner's right to the enjoyment of the property can be properly designated as a taking of that property").

As noted, the magistrate determined, based on the evidence presented, that "[c]ontrary to the City's assertions, the flooding of Relator's basements is not caused by Relator's lateral sanitary sewer lines." Rather, the magistrate found, the flooding is caused by heavy rains in conjunction with illegal connections by property owners of their perimeter water drains to the city's sanitary sewer system. The magistrate further noted that the city had been put on notice of these illegal connections since at least June 1980. Thus, the magistrate concluded, "Despite notice of the illegal connections described above, the City did not exercise reasonable diligence and care to keep the sanitary sewer free of the storm water which entered the sanitary sewer from those illegal connections."

Despite the above findings, the magistrate further found that a taking had not occurred because the cause of the flooding was the city's inaction. The trial court agreed with the reasoning of the magistrate that there must be a governmental action, as opposed to inaction, in order for there to be a taking. In support, both the magistrate and trial court relied on a federal Court of Claims decision, *Barnes v. United States* (1976), 210 Ct.Cl. 467, 538 F.2d 865.

Relator argues that the magistrate and trial court erred in attempting to draw a distinction between governmental action and inaction, and that this distinction is without support under Ohio law. We agree.

A long line of Ohio Supreme Court cases holds that a taking may result where sewage or storm water from a governmental authority causes damage to a property owner. See *Masley v. Lorain* (1976), 48 Ohio St.2d 334, 2 O.O.3d 463, 358 N.E.2d 596, syllabus ("[t]he construction and operation of a municipal storm sewer system so as to cause material damage to a downstream landowner, as a result of flooding from rains or other causes which are reasonably foreseeable, is

a direct encroachment upon that land which subjects it to a public use that excludes or restricts the landowner's dominion and control over his land, and such owner has a right to compensation for the property taken under Section 19, Article I of the Ohio Constitution"); *Lucas v. Carney* (1958), 167 Ohio St. 416, 5 O.O.2d 63, 149 N.E.2d 238, syllabus (flow of surface water from county's land that deposited debris on land of private property owners and deprived owners of use and enjoyment of property constituted taking "for which county is liable, and the owner of such property is entitled to institute an action and have a jury empaneled to determine the compensation due him from the county for the appropriation *pro tanto* of his property"); *Norwood, supra* (sewer constructed by private parties, but subsequently taken over and controlled and maintained by city, which caused flooding and pollution on land stated a cause of action for temporary appropriation of private property to a public use); *Mansfield v. Balliett* (1902), 65 Ohio St. 451, 63 N.E. 86, paragraph three of the syllabus ("[w]here a municipal corporation, without a legal appropriation in which the riparian owner is afforded an opportunity to obtain compensation, causes its sewage to be emptied into a natural watercourse, thereby creating a nuisance inflicting special and substantial damages on such proprietor, it is liable to an action for the damages so sustained").

The city argues that this case is distinguishable from other actions involving a taking of private property because the instant case does not involve a public improvement; rather, the sanitary system "is a preexisting system that has been in place for a long time." The city further contends that it did not engage in any affirmative act, nor did it provide any authorization.

We find little significance to the city's claim that the sewer system was preexisting and in place for a long time. The findings of fact by the magistrate do not indicate that the flooding was caused due to the original design of the system ("there have been no defects or malfunctions in the City's eight-inch sanitary sewer line"). Rather, the flooding resulted from "heavy rains in conjunction with the illegal connections" made by other property owners. Further, while the sewer line was constructed by someone "other than the City," the magistrate noted that prior to December 31, 1984, the city "acquired the eight-inch line, and it has been a dedicated City sanitary sewer line since that time."

As noted above, the city argues that Ohio cases involving a taking require an affirmative act on the part of the governmental authority. In particular, the city contends that the holding in *Masley, supra,* and its interpretation of the holding of other cases cited therein, "clearly contemplates the necessity of government action when there is a taking."

Relator argues that the city misreads *Masley* and that the facts of that case actually involve the imposition of liability for the failure to act. We agree with

relator's analysis of that case. In *November Properties v. Mayfield Hts.* (Dec. 6, 1979), Cuyahoga App. No. 39626, unreported, the court discussed the holding in *Masley*, as well as the holding in *Myotte v. Mayfield* (1977), 54 Ohio App.2d 97, 8 O.O.3d 202, 375 N.E.2d 816, in considering whether a city's failure to act can give rise to liability. In *November Properties*, the court first noted the factual background of the *Masley* decision:

"In *Masley* the City of Lorain wished to install a storm sewer system.. * * *

"The City of Lorain hired an engineer who made a report recommending the enclosure of the storm sewers as well as the improvement of Martin Run Creek by widening, deepening and straightening it. The city proceeded with the implementation of the storm sewer system, and did actually install the enclosed tributary storm sewers, but did not improve Martin Run Creek.

"As a result of the increased and accelerated flow of water after storms and rains, Martin Run Creek overflowed and the water ponded on the Masley property until it gradually subsided and flowed into Lake Erie. The Masleys filed an action against the City of Lorain on alternative theories of damage and unconstitutional appropriation of property in violation of Art. I, Sec. 19 of the Ohio Constitution.

"The trial court found that the Masleys did not have a cause of action either for damages or for appropriation. The Court of Appeals reversed that judgment, holding that there was no damage based on the traditional riparian law theory, but that the Masleys had stated a cause of action for appropriation since their property was effectively taken over and not able to be used by the Masleys.

"The Ohio Supreme Court affirmed the decision of the Court of Appeals, finding an appropriation of the Masleys' property, for which compensation must be paid." *Id.* at 23–25.

The court in *November Properties* then analyzed the basis of the Ohio Supreme Court's holding in *Masley*:

"The principal holding of *Masley* is that where a municipality constructs or fails to maintain a public improvement such as a storm sewer system and thereby effectively takes private property in that municipality for its own use by casting surface waters upon that property, it must pay compensation for the property taken under Art. I, Sec. 19 of the Ohio Constitution.

"A review of the record in *Masley* clearly demonstrates that the real basis of the decision was that, because the city had not widened, deepened or straightened Martin Run Creek, as recommended by the engineer, the flooding that occurred constituted an appropriation of the Masleys' property, for which the city was liable. * * * Because the city had been forewarned, but *failed to act* in the

required manner, and because the flooding effectively appropriated the Masley property, the city was liable.

" * * *

"In * * * *Masley* * * * the liability did not attach to the city solely on the basis of the action taken by the city. On the contrary, liability attached on the basis that the city did not install a complete and adequate system. It was the city's failure to provide an adequate system that made it liable. * * * It was the city's failure to improve Martin Run Creek which substantially contributed to the taking of the Masley property.

"In *Myotte*, the city approved plans for storm sewers for the industrial park immediately upstream of the Myotte property. The city recognized that there would be an increase and acceleration of the flow of the storm water because of the development of the industrial park. It was also aware that the natural watercourse in front of the Myotte house was four feet by six feet which narrowed to and was restricted to 27 inches due to the construction of a culvert by Mrs. Myotte in front of her home. It was the city's failure to remove the culvert and widen and deepen the channel, if necessary, that led to its liability.

"Therefore, the lesson of *Masley* and *Myotte* is that liability will attach to a municipality by its *refusal* to take action as much as by its improper action." (Emphasis added.) *Id.* at 25–28.

The court in *November Properties* went on to hold that "[w]here a municipality maintains an inadequate sewer system which causes flooding and an effective appropriation of property or major damage, liability will attach * * * whether the municipality acts affirmatively and deliberately or whether it fails to act." *Id.* at 31. The court reasoned that "the municipality's affirmative act or its failure to act produces the same result, that being damage and liability." *Id.*

We find that Ohio law, as noted by the *November Properties* court's analysis of *Masley*, does not support the trial court's attempt to distinguish between an affirmative act by a governmental entity as opposed to a failure to act. Further, we agree with relator's contention that the federal Court of Claims decision in *Barnes*, relied on by the trial court, does not stand for the proposition that only affirmative acts can cause a taking. As noted by the relator, the distinction between affirmative governmental acts and the failure to act was not even at issue in that case. Rather, at issue in *Barnes* was whether flooding problems experienced by the plaintiffs were the "natural consequence of the Government's control of the flow of a river through dams." *Id.,* 538 F.2d at 865.

In the present case, the facts indicate that the flooding of relator's property is the result of heavy rain in conjunction with illegal storm water connections to the city's sewer system by other property owners. The city's contention that there

has been "no authorization" is unpersuasive. The right to repair and control the storm and sewer system is vested with the city. See *November Properties, supra,* at 20 ("maintenance of local storm and sanitary sewers is the responsibility of a municipality"), citing *Ball v. Reynoldsburg* (1963), 175 Ohio St. 128, 23 O.O.2d 413, 192 N.E.2d 51; *Barberton v. Miksch* (1934), 128 Ohio St. 169, 190 N.E. 387; *Portsmouth v. Mitchell Mfg. Co.* (1925), 113 Ohio St. 250, 148 N.E. 846; *Canton v. Shock* (1902), 66 Ohio St. 19, 63 N.E. 600. The fact that there is a city ordinance [1] forbidding such connections is of little consequence to relator where the evidence is undisputed that the city, despite knowledge of the illegal connections, made no effort to enforce its provisions. We fail to see how the city's decision (whether viewed as an act or omission) to ignore the effects of the illegal connections relieved it of its duty to maintain and operate the sewer system, especially where the right to control and repair the sewer rests solely with the city. See *Hines v. Nevada* (1911), 150 Iowa 620, 130 N.W. 181, 184 (fact that individual lot owners made connections with sewer system in violation of ordinance would not relieve city of duty to prevent sewer from becoming a nuisance; the duty of maintenance, repair and preventing it from becoming source of discomfort could not be avoided by delegating it or shifting it to the shoulders of the lot owners). Further, the evidence, as noted by the magistrate, indicates that "[t]he flooding of Relator's basements is an inevitable, recurring and inundating condition. The flooding will recur with heavy rainfall."

Under these circumstances, we find that the sewer system at issue, maintained and controlled by the city, was used by the city in a manner causing damage to relator from flooding by raw sewage, and that this interference with the landowner's use and enjoyment of the property constituted a taking. See *Masley, supra; November Properties, supra,* at 25 (where a municipality "fails to maintain a * * * sewer system and thereby effectively takes private property in that municipality for its own use by casting surface waters upon that property, it must pay compensation for the property taken under Art. I, Sec. 19 of the Ohio Constitution").

The trial court further held, based on its determination that no taking occurred, that relator's proper remedy sounded in tort, *i.e.,* an action based on negligence. However, "[i]t is well settled in Ohio that a property owner's remedy for an alleged 'taking' of private property by a public authority is to bring a

---

1. Columbus City Code 1145.23 states:

"Except as otherwise provided by this chapter, no person shall connect roof, foundation, area way, parking lot, roadway, or other surface runoff or ground water drains to any sanitary sewer which is connected to the city's POTW treatment facility. Any such connections shall be considered illegal, and shall be subject to immediate removal by the owner of the premises so connected, and at such owner's expense."

mandamus action to compel the authority to institute appropriation proceedings." *Consol. Rail Corp. v. Gahanna* (May 16, 1996), Franklin App. No. 95APE12–1578, unreported, at 8, 1996 WL 257457 (noting that "[i]nverse condemnation and similar direct actions to obtain compensation for a 'taking' of private property are not recognized in Ohio"). See, also, *Probst v. Summit Cty.* (Mar. 26, 1997), Summit App. No. 17810, unreported, at 9, 1997 WL 148614 ("[b]ecause Ohio does not recognize a direct 'inverse condemnation' action to obtain compensation for the taking of private property, a property owner's remedy for an alleged taking is an action in mandamus to compel the public authority to institute appropriation proceedings"); *Keyport Land Co. v. Toledo* (Dec. 10, 1993), Lucas App. No. L–92–285, unreported, at 4, 1993 WL 513197 ("[i]n cases concerning claims of appropriation without compensation, mandamus is the proper procedure"); *Florian v. Paul* (June 8, 1977), Hamilton App. No. C–76332, unreported, at 4 ("[t]he Supreme Court of Ohio has determined that where a taking is made by the state, or any subdivision thereof, the property owner's proper avenue of redress is an action for mandamus to compel the appropriating authority to formally appropriate the property in question").

In *Florian,* the plaintiff brought an action for compensation against a board of county commissioners, alleging that plaintiff was the owner of certain real property and that substantial quantities of raw sewage had been permitted by defendants to flow from sewer lines onto plaintiff's property. Plaintiff alleged that the actions of defendants constituted a partial and temporary taking of his property without compensation. The defendants moved to dismiss plaintiff's complaint, alleging that plaintiff's complaint stated a cause of action for negligence instead. The trial court agreed and dismissed the complaint.

On appeal, the court in *Florian* reversed, stating:

"We believe that the trial court in the instant case was under a[n] * * * obligation to permit the plaintiff to prove his entitlement to * * * [a] broad range of relief. The plaintiff's claim for compensation was based not upon some inapt theory of negligence, but upon an alleged appropriation of his property by the defendant Commissioners for a public use. Moreover, the factual allegations of the instant complaint, which stand admitted as true for purposes of the motion to dismiss, set forth every element necessary to establish the existence of a compensable *pro tanto* appropriation, to wit: that plaintiff had suffered a direct, if temporary and partial, encroachment upon his property which subjected it to a public use and which excluded or restricted his dominion and control over such property. See *Masley v. Lorain* (1976), 48 Ohio St.2d 334 [2 O.O.3d 463, 358 N.E.2d 596]; *Lucas v. Carney* (1958), 167 Ohio St. 416 [5 O.O.2d 63, 149 N.E.2d 238]; *Norwood v. Sheen* (1933), 126 Ohio St. 482 [186 N.E. 102].

"The plaintiff thus properly alleged a claim for a *pro tanto* appropriation of his property by the defendant Commissioners, and was entitled to proceed to trial in order to obtain all appropriate relief therefor. The Supreme Court of Ohio has determined that where a taking is made by the state, or any subdivision thereof, the property owner's proper avenue of redress is an action for mandamus to compel the appropriating authority to formally appropriate the property in question. *Wilson v. City of Cincinnati* (1961), 172 Ohio St. 303 [16 O.O.2d 71, 175 N.E.2d 725]." *Id.* at 3–4.

Similar to the facts of *Florian*, in the instant case relator's complaint did not seek damages based on alleged negligence by the city. Rather, the complaint alleged that "[t]he presence of raw sewage on Relator's property has resulted in a temporary and/or permanent and substantial interference [with] the Relator's use and enjoyment of its property amounting to a taking."

Based upon the foregoing, we find that the trial court erred in its legal determinations that only an affirmative act constitutes a taking and that relator had an adequate remedy at law by means of a negligence action. Where the evidence at trial established that the cause of the flooding was heavy rains in conjunction with the illegal connections, resulting in the flow of sewage onto relator's property, we conclude that relator is entitled to a writ of mandamus ordering the city to commence statutory appropriation proceedings to compensate relator for the taking of its property. Thus, relator's first, second, and third assignments of error are sustained.

In light of our disposition of the above assignments of error, the issue raised under relator's fourth assignment of error, regarding the trial court's denial of relator's motion for leave to amend its complaint, is rendered moot.

Accordingly, relator's first, second, and third assignments of error are sustained, relator's fourth assignment of error is rendered moot, the judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and MASON, JJ., concur.