OPINION
Trafalgar Corporation appeals from a judgment of the Miami County Court of Common Pleas which denied its motion for declaratory judgment.
The pertinent facts are as follows. Trafalgar Corporation is an Ohio corporation that is controlled by the Geisinger family. For approximately thirty-five years, the Geisinger family or Trafalgar Corporation (hereinafter referred to collectively as "Trafalgar") has owned a fifty acre tract of land located at 1619 Monroe-Concord Road in Concord Township, Miami County, Ohio.
In 1957, the Miami County Board of Commissioners adopted a Zoning Resolution for Miami County which established various zoning requirements for land located in unincorporated areas of Miami County. That resolution was amended in 1965. The resolution required the Miami County Planning Commission's approval for residential building lots with road frontage of less than 125 feet.
In 1969, Trafalgar sought approval of a preliminary development plan for the tract of land. The plan consisted of fifty-three lots on the fifty acres. The Miami County Planning Commission approved the plan, subject to the owners moving a road on the proposed plan one lot north and obtaining the approval of the City of Troy Planning Commission. Trafalgar did not pursue its plan to develop the property, however, because "it was not economically feasible" at that time.
In 1995, 1997, and 1999, Trafalgar requested zoning changes and submitted new development plans for the tract of land. Each time, the Miami County Planning Commission, Miami County Zoning Commission, and Board of Miami County Commissioners approved a zoning change for the land from A-2 General Agricultural to R-1AA Single Family Residential. On each occasion, however, voters in Concord Township disapproved the zoning change through referendum.
On June 23, 1999, Trafalgar filed a complaint for declaratory judgment, asking the trial court to find R.C. 303.12 unconstitutional and to declare the property rezoned as requested. The trial court denied the complaint in two judgments dated May 22, 2000 and February 6, 2001.
Trafalgar now appeals the trial court's decision and asserts five assignments of error.
 I. THE TRIAL COURT ERRED IN CONCLUDING THAT THE 1969 MIAMI COUNTY PLANNING COMMISSION APPROVAL OF THE LAND USE, WHICH WAS THE ONLY PRE-CONDITION TO DEVELOPMENT UNDER THE THEN-EXISTING MIAMI COUNTY ZONING RESOLUTION, WAS INEFFECTIVE AS AN APPROVAL OF THE PROPOSED LAND USE[.]
Trafalgar argues that the trial court erred when it concluded that the Planning Commission's 1969 decision was an ineffective final approval of the development plan.
In its decision, the trial court concluded that the Miami County Planning Commission's approval in 1969 was conditional because the approval was subject to two conditions. The trial court found that because the record was silent as to whether such conditions were ever met, it could not conclude that the 1969 approval had been a final, legislative act.
The minutes from the 1969 Miami County Planning Commission meeting clearly indicate that approval was given subject to a road in the development being moved one lot north and subject to approval from the City of Troy Planning Commission. The record does not contain evidence to demonstrate whether those conditions were met. At oral argument, Trafalgar's attorney admitted that the record was silent as to whether the conditions had been satisfied, and he did not indicate to the court that Trafalgar had, in fact, sought and obtained City of Troy Planning Commission approval.
Further, the Zoning Resolution in the record states in Section VIII that "[b]efore * * * changing the use of any premises, application shall be made to the County Zoning Inspector and a zoning certificate secured." The parties do not call our attention to this provision in the Zoning Resolution, but it appears to us that it is applicable to the case. The record contains no evidence that Trafalgar applied for or received a zoning certificate.
In the trial court, the parties stipulated that the 1969 approval "did not have an expiration date." In 1995, 1997, and 1999, Trafalgar filed a "Request for Change [of] Zoning" asking that the tract of land "be changed from the present zoning" of A-2 General Agricultural to R-1AA Single Family Residential. In 1969, the county apparently did not have zoning districts because, at that time, the Miami County Planning Commission merely approved the preliminary plan subject to conditions without mentioning zoning districts such as A-2 General Agricultural and R-1AA Single Family Residential. By 1995, however, the county apparently had adopted zoning districts and the tract of land had been zoned A-2 General Agricultural. Because it was zoned A-2 General Agricultural and not R-1AA Single Family Residential, it would appear that the county must not have considered the Miami County Planning Commission's 1969 approval to still be in effect at the time it adopted zoning districts.
Considering the above evidence, the trial court did not err in deciding that the Miami County Planning Commission's 1969 approval was not a final approval.
The first assignment of error is overruled.
 II. PRIVATE LAND USE MAY NOT BE RESTRICTED BY GOVERNMENT IN A FASHION THAT BEARS NO SUBSTANTIAL RELATIONSHIP TO PUBLIC HEALTH, SAFETY AND WELFARE, REGARDLESS OF WHETHER THAT RESTRICTION IS ACCOMPLISHED BY A LEGISLATIVE ACT OR THE RIGHT OF REFERENDUM[.]
Trafalgar argues that the electors' use of referendum to deny the zoning change violated its right to substantive due process because the denial was arbitrary and unreasonable and had no substantial relationship to the public's health, safety, or welfare.
Substantive due process gives property owners the right to be free from arbitrary or irrational zoning decisions. Kenney v. Blackwell (June 30, 1999), S.D. Ohio No. C2-97-1389, unreported, affirmed (2000), 225 F.3d 659, citing Village of Arlington Heights v. Metropolitan Housing Dev. Corp. (1977), 429 U.S. 252, 263, 97 S.Ct. 555, 562. A property owner can challenge a zoning restriction if it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Village of Euclid v. Ambler RealtyCo. (1926), 272 U.S. 365, 395, 47 S.Ct. 114, 121. The guarantees of substantive due process apply to the people's use of referendum because "[l]egislative acts by the people are to be controlled and construed by the same principles as are applied to legislative acts of the state legislature." Fulmer Supermarket, Inc. v. State, Director, Dept. ofLiquor Control (Sept. 13, 1988), Franklin App. No. 88AP-26, unreported.
To demonstrate a substantive due process violation, Trafalgar was required to establish that, in passing the referendum, the people acted in an arbitrary and irrational way. See Downie v. Liverpool Twp.Trustees (May 4, 1988), Medina App. No. 1662, unreported, citing Useryv. Turner Elkhorn Mining Co. (1976), 428 U.S. 1, 15, 96 S.Ct. 2882,2892. The denial of Trafalgar's requested zoning change through referendum was a legitimate exercise of the people's power if it was not clearly arbitrary and unreasonable. See Downie, supra, citing Village ofEuclid, 272 U.S. at 395, 47 S.Ct. at 121.
In an attempt to demonstrate that the people acted arbitrarily and irrationally, Trafalgar makes many claims and statements about the record in its appellate brief. Such claims and statements are often not supported by the record, however, and some are even inconsistent with the record.
In approving Trafalgar's 1997 application for a zoning change, the Board of Miami County Commissioners stated the following regarding the tract of land:
 [T]he area can be served with water and sewer services; the proposed zoning of R-1AA is consistent with surrounding zoning patterns; the use of the property for single family residential [housing] is compatible with surrounding land us[e] patterns; and, neither the transportation network nor other supportive services will be overburdened by this zoning change and possible development.
The above statement is the only evidence in the record which discusses the appropriateness of building residential housing on the tract of land. No similar statements were made by the Board of Miami County Commissioners when it approved the development plan in 1995 or 1999. Further, although Trafalgar claims otherwise, the parties did not stipulate that the property is in a residential area. Instead, the stipulation merely stated that the Board of Miami County Commissioners had made the above finding in 1997.
The parties' stipulations state that residential use of the tract of land is consistent with the land use recommendation in the 1998 Comprehensive Plan adopted by Miami County. The Board of Miami County Commissioners' Resolution adopting the Comprehensive Plan is in the record, however, and makes no mention of residential use of Miami County land. In fact, the Comprehensive Plan states that "the plan will preserve farmland." Further, in its February 6, 2001 entry, the trial court stated that although the parties had stipulated that the Board of Miami County Commissioners had found the zoning change to be consistent with the surrounding zoning patterns, "the Court cannot find anywhere in the record evidence to support [Trafalgar's] argument [that] the property is located in a residential area, surrounded by residential properties. (In fact, it isn't.)" Thus, the trial court was apparently familiar with the area where the property was located and did not believe it was a residential area.
As we stated supra, Trafalgar had the burden of establishing that the people had acted arbitrarily and irrationally when they passed the referenda. If the people's passages of the referenda were not clearly arbitrary and unreasonable, they were a legitimate exercise of the people's power.
We cannot conclude that the trial court erred in determining that the record failed to demonstrate that the people had acted arbitrarily and irrationally. Trafalgar states, "[u]nfortunately some people do not want the subject property developed at all." Such statement does not indicate why the people are opposed to the zoning change. The Board of Miami County Commissioners' 1997 finding regarding the appropriateness of allowing a residential development to be built on the tract of land is not sufficient to demonstrate that the people acted clearly arbitrarily and unreasonably in passing the referenda, especially in light of the record which offers no possible explanation of why the people are opposed to the development.
The second assignment of error is overruled.
 III. AN UNCOMPENSATED TAKING OF PRIVATE PROPERTY BY GOVERNMENT IS UNCONSTITUTIONAL, REGARDLESS OF WHETHER THAT TAKING WAS ACCOMPLISHED THROUGH THE REFERENDUM PROCESS, PARTICULARLY WHERE AN EVIDENTIARY HEARING WAS NOT ALLOWED TO PLAINTIFF BELOW ON ANY ISSUE[.]
Trafalgar argues that the referenda constituted a taking of its private property that had no relationship to public welfare or community needs. Trafalgar claims that, because it has suffered this taking, it may file suit against the Board of Miami County Commissioners to obtain damages for inverse condemnation.
"Inverse condemnation * * * is a `shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.'" Cityof Cincinnati v. Chavez Properties (1996), 117 Ohio App.3d 269, 274,690 N.E.2d 561, 564, dismissed (1997), 78 Ohio St.3d 1465, 678 N.E.2d 221, quoting United States v. Clarke (1980), 445 U.S. 253, 257,100 S.Ct. 1127, 1130; Agins v. City of Tiburon (1980), 447 U.S. 255, 258,100 S.Ct. 2138, 2140, fn. 2. Ohio does not recognize direct inverse condemnation actions in the court of common pleas against public authorities to obtain compensation for the taking of private property.State ex rel. Livingston Court Apts. v. Columbus (1998),130 Ohio App.3d 730, 739-740, 721 N.E.2d 135, 142, dismissed (1999),85 Ohio St.3d 1464, 709 N.E.2d 171. A property owner's remedy for an alleged taking of private property is to bring an action in mandamus to compel the public authority that committed the alleged taking to institute appropriation proceedings. Id. The property owner may also file an action for money damages in the Court of Claims. Nacelle LandMgt. Corp. v. Ohio Dept. of Natural Resources (1989), 65 Ohio App.3d 481,485, 584 N.E.2d 790, 792.
Trafalgar did not file an action in mandamus in the trial court. Its complaint requested that just compensation for the taking of its property be determined at trial. Thus, Trafalgar did not follow the proper procedure to assert this claim. The third assignment of error is overruled.
 IV. THE TRIAL COURT ERRED IN CONCLUDING THAT DECLARATORY JUDGMENT WAS NOT AVAILABLE TO ADDRESS THE QUESTION OF THE 1969 ZONING APPROVAL AND SUBSEQUENT GOVERNMENT ACTION[.]
Trafalgar argues that the trial court erred in determining that declaratory judgment was not an available avenue to address its arguments in this case.
In its May 22, 2000 judgment, the trial court did not state that declaratory judgment was an improper remedy for Trafalgar to seek. Instead, the court refused to grant declaratory judgment because it concluded that this case failed to meet the requirements for such a judgment. Further, in its February 6, 2001 entry, the trial court explicitly stated that declaratory judgment was an appropriate vehicle for ascertaining the constitutionality of R.C. 303.12(H).
The fourth assignment of error is overruled.
 V. A REFERENDUM ELECTION CANNOT PREEMPT A PRIOR LAND USE APPROVAL RENDERED UNDER APPLICABLE ZONING LAW, INSOFAR AS IT IS UNCONSTITUTIONAL AND ILLEGAL TO UTILIZE THE REFERENDUM PROCESS TO REVERSE AN ADMINISTRATIVE APPROVAL CONCERNING TOWNSHIP LANDS[.]
Trafalgar argues that "the referendum constitutes an unconstitutional delegation of legislative power to township electors."
The Supreme Court has stated that a referendum cannot be characterized as a delegation of power because all power derives from the people and "[i]n establishing legislative bodies, the people can reserve to themselves power to deal directly with matters which might otherwise be assigned to the legislature." City of Eastlake v. Forest City Ent., Inc. (1976), 426 U.S. 668, 672, 96 S.Ct. 2358, 2361; Kenney v. Blackwell (June 30, 1999), S.D. Ohio No. C2-97-1389, unreported, affirmed (2000), 225 F.3d 659. In framing the Ohio Constitution, the people reserved the power of referendum to themselves. Section 1, Article II, Ohio Constitution (stating, "The legislative power of the state shall be vested in a general assembly * * * but the people reserve to themselves the power to propose to the general assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote * * *.") Thus, referendum is not a power delegated to the electors but instead is one they reserved to themselves from the beginning.
Trafalgar also argues that, because the 1995, 1997, and 1999 approvals were administrative actions by the Miami County Planning Commission, as opposed to legislative actions, they were not subject to referendum. To support this argument, Trafalgar claims that the 1969 approval was a legislative act because it constituted the final approval for development of the tract of land and that the 1995, 1997, and 1999 approvals were merely administrative approvals of different quantities and locations of the houses on the tract of land.
As we stated supra, however, the trial court correctly concluded that the 1969 approval was not a final approval. Thus, the 1995, 1997, and 1999 approvals could not have been merely administrative approvals of different home quantities and locations but instead must have been legislative actions because each time, they were giving original approval for the development of the plat, as none of the earlier approvals continued to be in effect. See Peachtree Dev. Co. v. Paul (1981),67 Ohio St.2d 345, 350-352, 423 N.E.2d 1087, 1091-1093. Because the 1995, 1997, and 1999 approvals were legislative actions, they were subject to referendum. See id.
The fifth assignment of error is overruled.
The judgment of the trial court will be affirmed.
GRADY, J. and YOUNG, J., concur.