DECISION.
The home of appellants Thomas and Gwendolyn Bibbs was damaged when raw sewage backed up through the plumbing on the first and second floors and flooded the first floor and basement. The home became contaminated with mold, mildew, and bacteria, resulting in Gwendolyn and her son being diagnosed with severe asthma and allergies. The Bibbses vacated the house.
The Bibbses sued appellees Cinergy Corp. ("Cinergy"), Cincinnati Bell Telephone Company ("Cincinnati Bell"), and Cincinnati Metropolitan Sewer District ("MSD"). They alleged that Cinergy and/or Cincinnati Bell had installed a line of telephone poles in the front of their residence so that a pole had blocked a portion of the sewer line. After a thunderstorm in June of 1988, earth loosened and oozed through the break in the sewer created by the misplaced telephone pole, causing the sewer line to block and raw sewage to back up into their home. The Bibbses alleged that Cinergy had a duty to place the pole in a position that would not impede the flow of sewage, and that it had breached that duty. They alleged that MSD had a duty to inspect, operate, and maintain the sewer, and that it had breached that duty, and that it had also appropriated their home for public use without adequate compensation. The Bibbses settled with Cincinnati Bell.
Cinergy and MSD moved for summary judgment. Cinergy argued that Cincinnati Bell installed the pole, had the responsibility regarding its location, and was responsible for any consequent damages caused by the placement. According to Cinergy, The Cincinnati Gas Electric Company ("CGE") had installed electric utility lines on the telephone poles located on the Bibbses' street in 1925 and had updated the lines in 1972. CGE had not moved the poles during these projects.
The Bibbses moved to strike the affidavits of Mary Crowe, CGE's records custodian, and George Scherer, CGE's engineering supervisor, filed by Cinergy in support of its motion, contending that the affidavits offered improper opinion evidence and were not based on personal knowledge. The Bibbses also moved for summary judgment on the issue of the liability of Cinergy, Cincinnati Bell, and MSD. The trial court granted Cinergy's and MSD's summary-judgment motions and denied the Bibbses' motion to strike the affidavits and their summary-judgment motion.
The Bibbses appeal the entry of summary judgment against them, contending that the trial court erred in (1) denying their motion to strike the affidavits of Crowe and Scherer because their testimony was not based on personal knowledge, (2) granting summary judgment for Cinergy, (3) granting summary judgment for MSD, and (4) denying their summary-judgment motion.
In their motion to strike, the Bibbses argued that the affidavits of Crowe and Scherer constituted opinion evidence that did not comply with Civ.R. 56(E) and Evid.R. 701 and 702, because neither affiant had firsthand knowledge of the subject matter and because neither affidavit would assist the trier of fact. The Bibbses stated that the business records of CGE would probably determine the issue of whether Cinergy had a duty to them, but that the affidavits failed to supply the business records. (Crowe's initial affidavit and Scherer's affidavit referred to attached documents, but no documents were attached. Crowe's supplemental affidavit remedied the problem by attaching the documents to which she had referred. Scherer never filed a supplementary affidavit rectifying his omission.)
We have reviewed Crowe's affidavits, including the attached documents, and Scherer's affidavit. It is obvious that Crowe's affidavits contain factual statements based on her personal knowledge and that the attached documents on which she relied were admissible as business records under Evid.R. 803(6).
The mere fact that Crowe and Scherer relied on business records to garner their facts does not mean that the facts were not based on personal knowledge. Further, it was not an abuse of discretion for the trial court to consider the attached documents.[2] A document is properly admitted under Evid.R. 803(6) if the records custodian shows that it was (1) made at or near the time, by, or from information by, a person with knowledge, (2) kept in the course of a regularly conducted business activity, and (3) reflected the regular practice of the business entity to make the document. Crowe's affidavit provided a sufficient foundation to admit the documents.
Because Scherer did not provide the documents on which he relied for the facts to which he attested, we question the reliability of his affidavit. We believe that the trial court erred by not striking his affidavit. But because the facts in his affidavit were cumulative of the facts provided by Crowe's affidavit on the issue of Cinergy's lack of responsibility for the pole, we conclude that the error was not prejudicial. We overrule the Bibbses' first assignment.
The Bibbses' remaining assignments challenge the trial court's grant of summary judgment in favor of Cinergy and MSD. This court reviews a grant of summary judgment de novo.[3] Summary judgment was proper for Cinergy and MSD if (1) there was no genuine issue of material fact; (2) Cinergy and MSD were entitled to judgment as a matter of law; and (3) after construing the evidence most favorably for the Bibbses, reasonable minds could have only reached a conclusion adverse to them.[4] If Cinergy and MSD, as the moving parties, met their burden of demonstrating that there was no genuine issue of material fact concerning an essential element of the Bibbses' case,[5] the Bibbses had to come forward with specific facts demonstrating a genuine issue of material fact.[6]
The Bibbses alleged negligence against Cinergy and MSD. To prove negligence, the Bibbses had to demonstrate that Cinergy and MSD owed them a duty, that Cinergy and MSD breached that duty, and that the Bibbses suffered damages proximately resulting from that breach.[7]
In their second assignment, the Bibbses contend that the trial court erred by granting summary judgment for Cinergy based on the trial court's admission of the affidavits. We have concluded that the admission of Crowe's affidavit was proper and that the improper admission of Scherer's affidavit was not prejudicial. The Bibbses' claim against Cinergy was premised on the misplacement of the pole that crushed the lateral sewer line. Cinergy provided evidence that the pole that had cracked the lateral sewer was not installed, owned, or moved by Cinergy. The Bibbses offered no evidence to dispute these facts. Thus, because we conclude that the trial court properly granted Cinergy summary judgment on the Bibbses' claim, we overrule their second assignment.
The Bibbses contend in their third assignment that the trial court erred in granting summary judgment for MSD. The Bibbses argued below that MSD was liable for negligently maintaining the lateral sewer line. The trial court, in part, determined that MSD was immune from liability. That portion of its analysis was incorrect.
First, we conclude that MSD is a political subdivision as defined under R.C. 2744.01(F). It admitted in its answer that it was a division of the city of Cincinnati, and it pleaded governmental immunity and limited damages under R.C. Chapter 2744. Further, this issue was implicitly determined in H. Hafner Sons, Inc. v. Cincinnati Metro. Sewer Dist.[8]
R.C. 2744.02(A)(1) provides immunity to a political subdivision in a civil action for injury and property damage allegedly caused by an act or omission by that political subdivision or its employees in connection with a governmental or proprietary function. Exceptions to that immunity are found in R.C. 2744.02(B). That section provides, in part, that political subdivisions are liable for injury or loss to persons or property caused by the negligent performance of acts by their employees in connection with governmental or proprietary functions. Under R.C.2744.01(G)(2)(d), the maintenance of a sewer system constitutes a proprietary function. These provisions clearly remove the shield of immunity from MSD. Immunity is re-established, however, if one of the defenses or immunities listed in R.C. 2744.03 is applicable. (MSD does not assert the applicability of R.C. 2744.03, nor do we think any of the enumerated defenses apply.)
It is uncontested that the broken sewer line was a lateral or building line running under the Bibbses' property to provide services to them. Thus, we must determine whether summary judgment was proper on the Bibbses' negligence claim against MSD for failure to maintain the lateral sewer. We also note that if we determine that MSD was responsible for the sewage backup, the Bibbses' claim that the sewage backup constituted an unlawful taking is not properly before us. "It is well-settled in Ohio that a property owner's remedy for an alleged `taking' of private property by a public authority is to bring a mandamus action to compel the authority to institute appropriation proceedings."[9]
The Bibbses presented evidence that a previous owner or resident of their home had experienced a problem with a sewer line in 1991 and that MSD had had four feet of the main line replaced due to a cracked pipe. In his deposition, John Turck, a plumber, testified on behalf of the Bibbses that there was a break in the "lateral coming from the house" in the right-of-way, ten feet from the main sewer. MSD checked the main line and found no blockage, but found that a pole had been placed through the six-inch building or lateral sewer line, diminishing its flow capacity. An MSD crew replaced nineteen feet of the building or lateral sewer line and three feet of the main line sewer.
We conclude that the Bibbses failed to demonstrate that MSD owed them a duty to maintain a lateral sewer line. First, it is undisputed that the defect occurred in the lateral line, on the right-of-way, and not in the main sewer line. Section 1207 of the rules and regulations of MSD states, in part,
 The owner of the premises served by a sewer shall be responsible for the maintenance and cleaning of the building sewer line from the building to the point of connection with the public local sewer and for the maintenance, operation, cleaning, repair, and reconstruction of the building sewer from the building to the property line or point of connection in a public easement. Repair and reconstruction of the building sewer in a public right-of-way shall be the responsibility of the Department.
 This only makes sense because it is the main sewer line that is owned and used for the public and in the public domain. The pole was placed on the lateral line. The break occurred in the lateral line, ten feet from the main line. The main line was unobstructed. It was the lateral line that was obstructed and causing the backup. MSD repaired the lateral line. The Bibbses have failed to demonstrate that MSD was responsible for maintaining the lateral line or that the damage was not in the lateral line.
The Bibbses argue that, because Section 1207 of MSD's rules and regulations makes MSD responsible for repair and reconstruction of a lateral sewer in a public right-of-way, MSD is also responsible for maintenance of the lateral line. We disagree. A "repair" requires someone to fix something that is broken. If the rule had been intended to impose liability on MSD for maintenance, it would have specifically stated so, as it did for the property owner. We also take judicial notice of Cincinnati Municipal Code 719-29, which makes a property owner responsible for the maintenance and good condition of any lateral sewer branch except under limited circumstances not demonstrated here.
Further, Ohio common law holds that, where a sewer structure is on private property, a political subdivision is not obligated to maintain it unless the property has been used for public purposes.[10] "If the line is not used for public purposes but is for purely private use, * * * a city is not obligated to maintain it. Since the homeowner benefits from the tie-in with the main sewer line, even though the city may participate in the original tap-in, the homeowner is responsible for subsequent maintenance of that private service line called a lateral. This is true even where the actual repair to the lateral takes place on city property."[11]
Because the Bibbses have failed to demonstrate that the lateral line was used for public purposes or that the line causing the problem was not the lateral line, we conclude as a matter of law that MSD owed no duty to the Bibbses. Because the trial court properly granted summary judgment for MSD, we overrule the Bibbses' third assignment.
Because the trial court properly granted Cinergy and MSD summary judgment, it properly denied the Bibbses' motion for summary judgment on the issue of liability. The Bibbses' fourth assignment is overruled.
 Accordingly, we affirm the trial court's entry of summary judgment in favor of Cinergy and MSD.
 Judgment affirmed.
Hildebrandt and Sundermann, JJ., concur.
[2] Accord Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296,587 N.E.2d 290.
[3] See Doe v. Schaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243,1245.
[4] See Civ.R. 56; Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, 204.
[5] See Dresher v. Burt (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264,273.
[6] See Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108,111, 570 N.E.2d 1095, 1099.
[7] See Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75,77, 472 N.E.2d 707, 710; Kaczor v. Bellaire (July 13, 1998), Belmont App. No. 96 BA 60, unreported.
[8] See H. Hafner Sons, Inc. v. Cincinnati Metro. Sewer Dist. (1997), 118 Ohio App.3d 792, 694 N.E.2d 111. Accord Nice v. Marysville
(1992), 82 Ohio App.3d 109, 611 N.E.2d 468; Best v. Findlay (Dec. 5, 1997), Hancock App. No. 5-97-22, unreported; Kendle v. Summit Cty. (Apr. 15, 1992), Summit App. No. 15268, unreported.
[9] See State ex rel. Livingston Apts. v. Columbus (1998),130 Ohio App.3d 730, 739-740, 721 N.E.2d 135, 142, quoting Consol. RailCorp. v. Gahanna (May 16, 1996), Franklin App. No. 95APE12-1578, unreported (see cases cited therein).
[10] See Fatobene v. Warren (May 3, 1996), Trumbull App. No. 95-T-5269, unreported.
[11] See Kaczor v. Bellaire, supra; Fatobene v. Warren, supra.