DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Circleville Municipal Court summary judgment, in favor of the City of Circleville, Ohio (City), defendant below and appellee herein, and C.K. McFarland Sons, Inc. (McFarland), defendant below and appellee herein, on the claims against them by Larry and Janice Pfile, plaintiffs below and appellants herein. The following errors are assigned for our review:
First Assignment of Error:
"The Trial Court Erred in granting Summary Judgment on the Motion of the Defendant C.K. Mcfarland and Sons, Inc. in that there are Genuine issues of Material fact which need to be heard by a fact finder and the moving party was not entitled to Judgment as a Matter of Law."
Second Assignment of Error:
"The Trial Court Erred in Granting Summary Judgment on the motion of the Defendant City of Circleville in that there are Genuine Issues of material fact which need to be heard by a fact finder and the moving party was not entitled to judgment as a matter of law."
 {¶ 2} In April of 2001, appellants experienced sewer drainage problems with their home on 341 East Main Street in Circleville. City employees informed appellants that the problem was most likely a sewer line blockage for which they would be responsible. Appellants contacted a plumber but, when he could not remedy the situation, they contacted McFarland who agreed to excavate and repair the sewer blockage.
 {¶ 3} After some difficulty locating the exact problem, McFarland eventually determined that a concrete patch had separated and blocked the flow from the lateral line of the house into the main sewer line. McFarland removed the blockage, but a dispute arose over the amount of the bill for those services.
 {¶ 4} Appellants commenced the action below on December 7, 2001. Appellants alleged that: (1) the City was liable for removal of the blockage and repair of the sewer; and (2) McFarland's bill exceeded an initial $3,000 estimate that was given to them, that the company performed its work in an unworkmanlike manner and that it damaged sidewalks and landscaping. Appellants asked for a declaratory judgment that (1) the City was responsible for the cost of repairing the sewer and (2) McFarland should be held to its original $3,000 estimate and that they should be allowed an offset of $3,000 for the damage done to their property.
 {¶ 5} The City and McFarland both denied liability. McFarland also counterclaimed and alleged that appellants owed $6,755.20 for the work performed at their property or, in the alternative, owed $8,355.20 under an implied contract theory. In either event, McFarland asked for recovery of damages for services performed at appellant's property.
 {¶ 6} On June 17, 2002, the City moved for summary judgment and argued that it was immune from liability by virtue of the Political Subdivision Tort Liability Act. See R.C. 2744.01 et seq. Appellants argued that such provisions did not apply in this instance because their action was for declaratory judgment to interpret the City's responsibilities under a municipal ordinance rather than to determine City liability for negligence. On January 3, 2003, McFarland moved for summary judgment and argued that no genuine issues of material fact existed. Specifically, McFarland asserted that it and appellants had a contract for services and that appellants failed to pay them the charges due under that contract. In support of its argument, McFarland attached the affidavit of its principal — Louis McFarland — who attested that: (1) his only estimate to appellants was for a flat fixed rate of $12,000 for the repair work they needed[1] and (2) when appellants rejected that estimate, they agreed on other terms to include "$175 an hour for the big hoe and $75 an hour for the little hoe."[2]
Another affidavit, by a principal at Young Dozer Services, Inc., attested that `[t]he charge of $8,255.20" made by McFarland was reasonable.[3]
 {¶ 7} Appellants' memorandum contra disputed the number of hours McFarland worked and, thus, the underlying basis for their statement on account. Appellant, Janice Pfile's affidavit stated that she kept track of the hours McFarland and its people were at her home and her records did not match the work McFarland claimed to have done. The affiant also stated that she did not agree to pay an hourly rate for hoes.
 {¶ 8} On February 20, 2003, the parties filed an agreed entry and narrowed the legal issues between appellants and the City to a determination of the rights and obligations of the City under the Circleville Ordinances affecting sewers. With that in mind, on March 10, 2003, the court granted summary judgment in favor of both appellees. The court found the City had no legal obligation to fix the sewer blockage. As for the McFarland's claims, the court reasoned that "the issue in such an `oral contract' is whether such work was comprehended in a `workmanlike manner.'" The court then noted that appellants adduced no evidence to show that the work was not done in a workmanlike manner. Further, the court found that there was nothing to show that the amounts were not "reasonable or ordinary."
 {¶ 9} In sum, the trial court ruled against appellants on their claims against the City and McFarland The court ruled in favor of McFarland on its counterclaim, however, and awarded $8,255.20 in damages. This appeal followed.
 I {¶ 10} Before we review the assignments of error on their merits, we first pause to address our standard of review on appeal. This Court reviews summary judgments de novo. See Broadnax v. Greene Credit Service
(1997), 118 Ohio App.3d 881, 887, 694 N.E.2d 167; Coventry Twp. v. Ecker
(1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327; Maust v. Bank OneColumbus, N.A. (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765. That means we afford no deference to the trial court's decision, Hicks v.Leffler (1997), 119 Ohio App.3d 424, 427, 695 N.E.2d 777; Dillon v. Med.Ctr. Hosp. (1993), 98 Ohio App.3d 510, 514-515, 648 N.E.2d 1375; Moreheadv. Conley (1991), 75 Ohio App.3d 409, 411-412, 599 N.E.2d 786, and conduct our own independent review to ascertain whether summary judgment was appropriate. Woods v. Dutta (1997), 119 Ohio App.3d 228, 233-234,695 N.E.2d 18; Phillips v. Rayburn (1996), 113 Ohio App.3d 374, 377,680 N.E.2d 1279; McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236,241, 659 N.E.2d 317.
 {¶ 11} Summary judgment under Civ.R. 56(C) is appropriate when the movant can demonstrate that (1) there are no genuine issues of material fact, (2) it is entitled to judgment in its favor as a matter of law, and (3) reasonable minds can come to only one conclusion and that conclusion is adverse to the opposing party; said party being entitled to have the evidence construed most strongly in their favor. Zivich v. Mentor SoccerClub, Inc., 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201; Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197; Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46.
 {¶ 12} We further note that the party moving for summary judgment is the one who bears the initial burden of demonstrating that there exists no genuine issue of material fact and that it is entitled to judgment in its favor as a matter of law. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, 674 N.E.2d 1164; Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798. Once that burden is met, the onus shifts to the non-moving parties to provide evidentiary materials in rebuttal. Trout v. Parker (1991), 72 Ohio App.3d 720, 723, 595 N.E.2d 1015;Campco Distributors, Inc. v. Fries (1987), 42 Ohio App.3d 200, 201,537 N.E.2d 661; Whiteleather v. Yosowitz (1983), 10 Ohio App.3d 272,275, 461 N.E.2d 1331. With these principles in mind, we turn our attention to the two assignments of error.
 II {¶ 13} Appellants argue in their first assignment of error that the trial court erred in granting summary judgment to McFarland We agree. McFarland's counterclaims against appellant were based on contract. First, McFarland claimed that appellants owed it $6,755.20 on account from an oral contract to repair the blockage. Second, in the alternative, McFarland claimed appellants owed it $8,255.20 on an implied contract theory.
 {¶ 14} After our review of the case sub judice, we find that genuine issues of material fact exist concerning the terms of that oral contract. In his affidavit, McFarland attested that the terms of the oral contract called for appellants to pay "$175 an hour for the big hoe and $75 an hour for the little hoe." This was sufficient for McFarland to carry its initial burden of production on the issue of that oral contract. The burden then shifted at that point to appellants to adduce evidentiary materials to the contrary. We believe, for purposes of summary judgment analysis, that they met that burden. Appellant Janice Pfile attested that they did not agree to an hourly rate for the hoes and, in any event, McFarland did not perform as much work on her property as it claimed in the bill. These discrepancies are issues that must be resolved by a trier of fact rather than by summary judgment.[4]
 {¶ 15} Another problem exists with the summary judgment for McFarland Part of appellants' claim against McFarland was for damages done to a sidewalk and landscaping for which appellants requested a set-off of $3,000 against their bill. McFarland did not address this issue in its motion for summary judgment or produce any evidence to negate that claim. Thus, we cannot find that it carried its initial burden in that regard.
 {¶ 16} Once again, it appears that the underlying factual dispute in the instant case precludes summary judgment. Thus, the parties must have the opportunity to fully present their evidence before a trier of fact.
 {¶ 17} For all these reasons, we find the first assignment of error to be well taken and it is accordingly sustained.
 II {¶ 18} Appellants argue in their second assignment of error that the trial court erred by granting summary judgment for the City. At the outset, we note that no dispute exists that the blockage occurred in a lateral line running from appellants' home to the main sewer line. Appellants concede in their brief that the lateral line was "blocked at the opening to the main" line. They assert, however, that because the blockage was underneath the City street, it is nevertheless within the City's jurisdiction and the City should be responsible for its repair. We are not persuaded.[5]
 {¶ 19} Our analysis begins with the premise that when a municipal corporation assumes the management and control of a sewer within the municipality, it must exercise reasonable diligence and care to keep the sewer in repair. Doud v. Cincinnati (1949), 152 Ohio St. 132, 87 N.E.2d 243, at paragraph two of the syllabus; also see State ex rel. Livingston CourtApts. V. Columbus (1998), 130 Ohio App.3d 730, 739, 721 N.E.2d 135;Wamsley v. West Jefferson (Dec. 7, 1998), Madison App. No. CA98-02-005. However, municipalities are not generally obligated to maintain and repair lateral sewer lines. Bibbs v. Cinergy Corp. (Apr. 12, 2002), Hamilton App. No. C-010390; Kaczor v. Bellaire (jul. 13, 1998), Belmont App. No. 96BA60; Fatobene v. Warren (May 3, 1996), Trumbull App. No. 95-T-5269. Because a household benefits from the tie-in to the main line, the household should be responsible for its maintenance. Fatobene,
supra. In light of the fact no dispute exists that the blockage occurred in the lateral line from appellants' home, we agree with the trial court that the City was entitled to summary judgment on this issue.
 {¶ 20} Appellants counter by citing a Circleville Ordinance under which the City accepted the responsibility for maintenance and upkeep of a lateral line that run under City streets. In particular, appellants cite the following:[6]
"925.01 Definitions
(a) Unless the context specifically indicates otherwise, the meaning of terms used in this chapter shall be as follows:
(34) `Public Sewer' means a sewer provided by or subject to thejurisdiction of the City of Circleville. * * * (Emphasis added).
 {¶ 21} Appellants assert that because the portion of the lateral line where the blockage occurred is located under a City street, and because appellants did not have the authority to go into the street, block traffic and commence excavation, that part of the lateral line came within the "jurisdiction" of the City. Thus, appellants argue the City was liable for its repair. We disagree.
 {¶ 22} The jurisdiction to which the above cited ordinance refers is that over the sewer, not the street above the sewer. Moreover, Circleville City Ordinance 925.08(a) provides that "the building sanitary sewer, which may also be called the house sewer or house connection, from 5 feet outside the inner face of a structure wall to the public sewer is a private sewer and is the responsibility of the property owner toinstall, repair and maintain even though part of this sewer may have been constructed by the City." (Emphasis added.) This ordinance makes it clear that the City does not assume responsibility for lateral lines. Rather, the City only assumes responsibility for only the main sewer lines.
 {¶ 23} We also note that this same situation arose in the Eleventh District Court of Appeals in Fatobene, supra. In that case the homeowners were forced to excavate beneath a road in the City of Warren. Although the precise argument raised by appellant's herein was apparently not raised in that case, the Court nevertheless noted that the lateral line was a private line and the homeowner's responsibility to where the lateral line connected to the main line, despite going underneath a street. We believe the same is true here.
 {¶ 24} Although we are sympathetic to the headaches and expense incurred by appellants, the lateral line from their home is essentially a private sewer to the point where it connects to the main line. We find nothing in the law or in the Circleville City Ordinances that makes the City liable for the removal of the lateral line blockage.
 {¶ 25} For all these reasons, we conclude the trial court correctly granted summary judgment to the City. The second assignment of error is therefore overruled.
 {¶ 26} Having sustained the first assignment of error, the judgment of the trial court is affirmed in part and reversed in part. We remand this matter to the trial court for further proceedings on the claims between appellants and McFarland
Judgment Affirmed in part, reversed in part and case remanded for further proceedings consistent with this opinion.
Kline, J.: Concurs in Judgment Opinion (vote received 10-22-03).
Evans, P.J.: Concurs in Judgment Opinion (vote received 12-16-03).
[1] McFarland explained, inter alia, that because so many variables are involved in this kind of work that he gave a high estimate in order to protect himself.
[2] McFarland's affidavit did not expressly set forth the amount alleged to be due on the account owed by appellants.
[3] This was, presumably, in support of McFarland's implied contract theory. The affiant did not address the charges claimed by McFarland to be due on account under the alleged oral contract (i.e. $6,755.20).
[4] We acknowledge that part of the problem in the case sub judice is that McFarland's four page affidavit does not assert that appellants owe $6,755.20 on account for the oral contract or $8,255.20 on the implied contract. The only reference to damages comes in the affidavit submitted by someone at Young Dozer Services, Inc. Nevertheless, the underlying factual controversy a grant of summary judgment.
[5] Because the parties' February 20, 2003 agreed entry narrowed the issues in this case to whether the City was legally obligated to repair the blockage, the issue of liability under the Political Subdivision Tort Liability Act R.C. 2744.01 et seq is no longer involved.
[6] We take the language of these ordinances directly from the February 20, 2003 agreed entry rather than any official source maintained by the City of Circleville.